[No. 29845. *En Banc.* November 21, 1946.]

*In the Matter of the Application of* JOSEPH D. MULLINS *for a Writ of Habeas Corpus.*

JOSEPH D. MULLINS, *Appellant,* v. MARY MULLINS, *Respondent.*[1]

[1]Reported in 174 P. (2d) 790.

*Wright, Booth & Beresford,* for appellant.

*Rummens & Griffin,* for respondent.

SIMPSON, J.—The applicant, Joseph D. Mullins, a resident of Akron, Ohio, sought to have a writ of *habeas corpus* issue out of the superior court of King county, whereby Mary Mullins, his former wife, be ordered to produce Joseph D. Mullins, Jr., in court, so that a hearing might be had, and that she be directed to immediately surrender the child to the applicant.

A temporary writ was issued commanding the defendant, Mary Mullins, to have the child in court July 11, 1945, for the determination of the issues relative to the custody of the minor. The cause came on for hearing on the date just mentioned. After the trial, the court made an oral decision denying the relief prayed for in the application. October 13, 1945, the trial judge filed a memorandum decision in which he found that the defendant, Mary Mullins, had established a domicile for herself and the minor child of the parties; that a journal entry of April 11, 1945, entered by an Ohio court changing the custody of the child from that of defendant to that of the applicant was void for lack of jurisdiction, and that it would be detrimental to the welfare of the child to order his return to Akron, Ohio.

October 19, 1945, the court made findings of fact and conclusions of law which followed the views expressed in the memorandum opinion. On the same day, the court entered its decree denying application for writ of *habeas corpus.* The applicant then appealed to this court.

There are eight separate assignments of error. The first five may be summed up as charging that the trial court erred in refusing to give full faith and credit to separate orders entered in the original divorce case regarding the

care and custody of the minor child of the parties, and in finding that the domicile of the minor had been established in this state and had conferred jurisdiction on the trial court to make and enter orders concerning the welfare of the child. Assignments numbered 6 and 7 charged error in finding that the applicant had refused to pay for the support of the minor, and that he was not a fit person to have custody of the child. The eighth, and last assignment, predicates error in the denying of appellant's motion for a new trial.

The facts may be summarized as follows: Appellant, a resident of Akron, Ohio, is a foreman in the printing department of the Firestone Tire and Rubber Company. January 17, 1934, appellant and respondent were married in West Virginia. After their marriage, they returned to Akron, Ohio, and there made their home. One child, Joseph D. Mullins, Jr., now about eight years of age, is their son.

In March, 1942, respondent filed an action for divorce in the court of common pleas of Summit county, Ohio, and was, after a trial, granted a decree of divorce, dated July 13, 1942. The decree approved a property settlement made between the parties and awarded the custody and control of the minor child to respondent, subject to certain rights of visitation to appellant.

February 11, 1944, the Ohio court, after a hearing, at which both parties were present, entered an order which provided in part as follows:

"Should Mary Mullins desire to take the child on a trip to the Pacific Coast to visit her parents or relatives, she may do so for a period of not to exceed two months, providing any period of visitation to which Joseph D. Mullins would have been entitled had the child been in Akron is made up to the said Joseph D. Mullins after the return of said child from the said trip."

February 21, 1945, appellant presented his petition in the court which had granted the divorce in the state of Ohio. In that petition, he recited among other things that, on or about the 25th day of October, 1944, Mary Mullins, without any notice to, or knowledge of, the appellant or the court,

took the minor child to the city of Seattle, Washington, where she has since retained him. His petition showed further that he had sent by registered mail a copy of the motion to respondent, who was residing with her mother, Mrs. Annie Barber at 5230 Tallman avenue, Seattle, Washington.

The record shows that November 13, 1944, appellant mailed a registered letter at Akron, Ohio, addressed to Mary E. Mullins, 5230 Tallman avenue, Seattle, Washington, and that it was received by Mrs. Annie Barber November 17, 1944. Mrs. Barber signed the receipt for Mary Mullins.

March 9, 1945, the Ohio court entered the following order:

"This cause came on to be heard upon the motion of the defendant asking and requesting this Court for a change of custody of the minor child of the parties from the plaintiff, Mary Mullins, to the defendant, Joseph D. Mullins, on the ground that the plaintiff, without and contrary to this Court's order, had removed the child from this Court's jurisdiction and out to the State of Washington and had retained the said child in the State of Washington contrary to this Court's order for a period in excess of four (4) months. The Court being fully advised in the premises hereby finds that the plaintiff has removed the said child from the State of Ohio and from the County of Summit for more than four (4) months contrary to and in violation of this Court's previous orders.

"It is therefore ordered, adjudged and decreed that unless the plaintiff, within the next thirty (30) days, to-wit: by April 10, 1945, returns the said child, to-wit: Joseph D. Mullins, Jr., to the City of Akron, County of Summit, Ohio, that the custody, care and maintenance of this child shall be at that time vested solely in the defendant, Joseph D. Mullins.

"This cause is continued to the 10th of April, 1945, at which time this matter will again be considered by this Court.                    OSCAR HUNSICKER
                                    "JUDGE"

April 11, 1945, the court made and entered a further order which reads:

"This cause, having been continued by this court from the 9th day of March 1945 to this the 10th day of April, 1945,

came on to be heard upon the motion of the defendant requesting change of custody of the minor child of the parties hereto from Mary Mullins to Joseph D. Mullins, and the former order of this court which ordered this case continued to April 10, 1945, and the court being fully advised in the premises finds:

"First: That this court has jurisdiction over the custody of the minor child of the parties by reason of the plaintiff, Mary Mullins, having filed in this court in case No. 138550 her petition for divorce, etc.

"Second: That under a former order of this court, this court did by journal entry grant the custody of the minor child of the parties, to-wit: Joseph D. Mullins, Jr., age 7, to the plaintiff Mary Mullins, and did provide for visitation rights of the said child with his father, Joseph D. Mullins, and did by the said journal entry authorize the plaintiff, Mary Mullins, to take the said child with her on a trip to the Pacific coast to visit her parents for a period of not to exceed two (2) months.

"Third: That the plaintiff, Mary Mullins, did remove the said child from this court's jurisdiction to a point outside the State of Ohio, to-wit: to the City of Seattle, Washington, on or about the 25th day of October, 1944, and the court finds that the said Mary Mullins has not returned the said child to this court's jurisdiction since that time.

"Fourth: That this court did, on the 9th day of March, 1945, execute a journal entry and filed the same in the Clerk's office of this court ordering Mary Mullins to return the said child, to-wit: Joseph D. Mullins, Jr., age 7, to a place within this court's jurisdiction within a period of thirty (30) days; that is, by April 10, 1945, and this court did in the said journal entry continue the hearing on this cause until this date, to-wit: April 10, 1945.

"Fifth: That on March 15, 1945 a registered letter was delivered to the residence of the said Mary Mullins in Seattle, Washington, and a return receipt card, signed by the mother of the plaintiff, was received and exhibited to this court, evidencing thereby that the said Mary Mullins had been notified of the continuance of this cause from March 9 to April 10.

"Sixth: The court finds further that Mary Mullins has failed, neglected and refused to return the said child to this court's jurisdiction.

"It is therefore ORDERED, ADJUDGED AND DECREED that the custody, care and maintenance of the minor child of the parties, to-wit: Joseph D. Mullins, Jr., be and the same is

hereby changed from Mary Mullins, plaintiff, to Joseph D. Mullins, defendant, and it is the further order of this court that Mary Mullins immediately turn over to the defendant, Joseph D. Mullins, the said minor child, Joseph D. Mullins, Jr., and that said defendant, Joseph D. Mullins, shall have and retain the care, custody and maintenance of the said child until the further order of this court.

"OSCAR HUNSICKER<br>"JUDGE"

Realizing that respondent would not obey the order of the Ohio court, appellant filed in this state his petition for a writ of *habeas corpus.*

When respondent moved to Seattle in October, 1944, she went to the home of her father and mother at 5230 Tallman avenue, Seattle. She stayed with them until the following January and then moved to the Theodora Home, at which place she was living at the time of the trial. She did not notify her former husband of her residence.

The question before the court here is whether the superior court had jurisdiction to determine the custody of the minor child.

The trial court in its memorandum opinion, and in finding No. 8 of its findings of fact, decided that the court of common pleas of Ohio did not have jurisdiction to enter the orders of February 11, 1944, March 9, 1945, and April 11, 1945. The court's memorandum opinion contains the following statement:

"The provision 'not to exceed two months' is an attempted modification of the decree of divorce awarding Mary Mullins the sole and exclusive care, custody, education and control of said minor, and in which decree there is no restriction against Mary Mullins taking said child out of the State of Ohio, either temporarily or permanently. This limitation of time, 'not to exceed two months,' was not asked for in defendant's motion, and its insertion in the order was an arbitrary action on the part of the court, against which the plaintiff, Mary Mullins, was not given an opportunity to be heard, and I will hold that it is void.

"Nor can the arbitrary action of the court, requiring the mother, Mary Mullins, to return the child to the jurisdiction of said court in Akron, Ohio, within sixty days, be justified on the ground that it was for the welfare of said child. It

would be most detrimental to the welfare of the child to be returned to Akron, Ohio, where defendant Mullins had brought disgrace and dishonor upon the mother and said minor by grossly neglecting them and openly consorting with a woman he afterwards married, thereby destroying the home.

"The journal entry of April 11, 1945, changing the custody of said minor child from Mary Mullins, plaintiff, to Joseph D. Mullins, defendant, is void for lack of jurisdiction.

"Mary Mullins has established a domicile for herself and child in the State of Washington, where the child is receiving proper care and attention in a suitable home. In my opinion, it is best for the welfare of the child that he continue where he is."

■ It is the general rule that, in the absence of fraud or want of jurisdiction, child custody provisions of a divorce decree of a sister state will be given full effect in any state to which the child may be taken. *Foster v. Foster,* 8 Cal. (2d) 719, 68 P. (2d) 719; *Minick v. Minick,* 111 Fla. 469, 149 So. 483; *Elliott v. Elliott,* 181 Ga. 545, 182 S. E. 845; *Hawkins v. Hawkins,* 350 Ill. 227, 183 N. E. 9; *White v. White,* 214 Ind. 405, 15 N. E. (2d) 86; *Ex parte Peddicord,* 269 Mich. 142, 256 N. W. 833; *State ex rel. Larson v. Larson,* 190 Minn. 489, 252 N. W. 329; *Barrett v. Barrett,* 79 S. W. (2d) (Mo. App.) 506; *Turner v. Turner,* 86 N. H. 463, 169 Atl. 873; *Ansorge v. Armour,* 267 N. Y. 492, 196 N. E. 546; *Gaunt v. Gaunt,* 160 Okla. 195, 16 P. (2d) 579; *Goldsmith v. Salkey,* 115 S. W. (2d) (Tex. Civ. App.) 778; *In re Penner,* 161 Wash. 479, 297 Pac. 757.

■ However, the asylum state may obtain jurisdiction of the child after it becomes domiciled.

■ In order to solve the problem presented in this case, it is first necessary to ascertain whether the Ohio court had jurisdiction to enter its judgment relative to the custody of the minor child. There can be no dispute about the validity of the order entered February 11, 1944, which permitted respondent to visit the Pacific coast with her child for a period of not to exceed two months. Appellant and respondent were present at the hearing upon which the order was based, and they were represented by counsel. The court

had jurisdiction, and its order cannot be attacked in this proceeding.

█ The question of the power of the court rendering an original decree of divorce to modify that decree regarding the custody of children in the absence of the children or child from its territorial jurisdiction, has been resolved by the great weight of authority in favor of such power of the court.

"It is the settled law of this state that the jurisdiction of the court rendering the decree of divorce is continuing as to the custody of children of the parties and as to awarding periodical allowance in favor of one party as against the other." *Lanctot v. Lanctot*, 125 Wash. 310, 216 Pac. 356.

In *Burns v. Shapley*, 16 Ala. App. 297, 77 So. 447, it appears that the father of two minor children obtained their custody by reason of a decree terminating the marriage status. The action for divorce had been brought by the wife in the state of Montana, where she was domiciled. The husband, after being awarded the custody of the children, removed them to the state of his domicile, Alabama. The ex-wife later obtained from the Montana court an order modifying the decree by granting her the custody of the children. The order was duly authenticated and presented to the Alabama court by the mother of the children in a *habeas corpus* proceeding. The appellate court, in reversing the trial court's refusal to honor the Montana order upon the ground that the order was void for want of jurisdiction, said:

"The appellant, armed with the duly authenticated decree of a court of competent jurisdiction of a sister state awarding the custody of the children to her, as the agent and trustee of that court and the sovereign state of Montana, is entitled to the custody of the children, for the purpose of returning them to that jurisdiction."

In *Andrews v. Andrews*, 15 Iowa 423, a valid decree of divorce had awarded the custody of the child to the defendant father, with visitation rights to the mother. Two years later, the father of the child made application to the same court for an order modifying the decree so as to limit

visits by the mother on the ground that she had over-reached her privilege, and was using it to annoy him and his family, and endeavoring to deprive him of the lawful custody of the child. He alleged that, due to that annoyance, he had been forced to change his place of abode to the state of Ohio, and that she had followed him, and with assistance had succeeded in kidnapping the child, thereby causing him considerable inconvenience and loss of money to regain possession of the child. The mother of the child appeared and demurred on the ground that the court had lost jurisdiction because of the domicile of the applicant and the child in the asylum state. To this the court said:

"As to the jurisdiction of the Court over the subject matter, which is alleged to be wanting because the parties had removed from the State, we are inclined to hold, that the same having once been duly acquired, it continues as long as the first judgment remains unexecuted, and under the control of the Court, and therefore binding upon the parties wherever they may be found."

In *Hersey v. Hersey*, 271 Mass. 545, 171 N. E. 815, 70 A. L. R. 518, the court held that it had continuing jurisdiction to modify its original decree relative to the custody of the child of the parties to the divorce decree, notwithstanding the fact that the child had been removed to the state of Maine by the mother, who had been given custody of the child, and that she was then domiciled in the state of Maine. In that case, the mother had petitioned the Maine court to render a decree of adoption of the child by herself and new husband, which decree was rendered without notice thereof to the father and former husband in Massachusetts. The Massachusetts court entertained a petition of the father for a change of custody. The former wife appeared and challenged the jurisdiction, basing her objection to jurisdiction upon the Maine decree. The Massachusetts court said:

"The litigation instituted by the filing of the original libel for divorce has not been terminated as to such orders but is still pending in the sense that they may be modified or annulled. . . . She accepted the benefit of all the advantages accruing to her under the decree. She re-

ceived it with all limitations and implications attaching thereto. She cannot now question the jurisdiction of the court to exercise the very power reserved in its original order in her favor, by which she has profited and which she has continued to enjoy."

In *Conrad v. Conrad,* 296 S. W. (Mo. App.) 196, the court, in upholding an order entered by the court granting a decree of divorce allowing the legal custodian, the mother, to take the minor child from the territorial jurisdiction of the court, said:

"However, the removal of a child from the state it [is] not a taking of it beyond the jurisdiction of the court in the sense that the court thereby loses jurisdiction to change or modify its decree in the future, should subsequent events require it, inasmuch as both parents, having necessarily been parties to the action for divorce, are personally bound by the court's decrees and orders. Consequently, the court may properly permit a parent to whom the custody of a child has been awarded to take it to another state, or even to a foreign country, provided it be made to appear that the welfare of the child will be thereby subserved."

The case of *State ex rel. Nipp v. District Court,* 46 Mont. 425, 128 Pac. 590, Ann. Cas. 1916B, 256, is a well-considered opinion upholding a modification order entered by a Nebraska court which had granted a decree of divorce. The modification order changed the custody of the child, which was in the state of Montana, where it had been taken by the father as legal custodian. In passing the court said:

"Notwithstanding the removal, the Nebraska court retained its jurisdiction, and it was competent for it to so amend the decree that the mother could enforce the right thereby accorded to her. (*Morrill v. Morrill,* 83 Conn. 479, 77 Atl. 1; *Hammond v. Hammond, supra* [90 Ga. 527, 16 S. E. 265]; *Wakefield v. Ives, supra* [35 Iowa 238]; *Stetson v. Stetson, supra* [80 Me. 483, 15 Atl. 60]; *Baily v. Schrader,* 34 Ind. 260; *State v. Rhoades,* 29 Wash. 61, 69 Pac. 389.)"

In *Pullen v. Pullen,* 161 La. 721, 109 So. 400, the supreme court of Louisiana held that a district court of that state had continuing jurisdiction over a divorce proceeding in so far as it was necessary and expedient to change or alter the custody of children, notwithstanding the fact that their

custody had been given to the father, who subsequently removed to another state and was domiciled therein at the time the petition to modify was filed. The court said:

"A judgment granting to either parent the care and custody of his or her minor child or children, in a decree of divorce, is not irrevocable. It is subject to modification at any time when a change of conditions demands it."

The court in *Stetson v. Stetson,* 80 Me. 483, 15 Atl. 60, had before it a contested petition for the custody of a minor child. The custody was changed from that of the father to that of the mother. The objection was made that the mother would take the child out of the jurisdiction of the court. In passing upon the question, the court stated:

"But even though it may be so, the child is not removed from the jurisdiction of the court. That has already attached. The decree is a conditional one, subject to modification and change. The mother takes the child subject to that condition. On any proper process for a change she is bound, wherever she may be, to take notice, and though she may not personally be within the jurisdiction of the court, the subject matter is, so that the judgment of the court will be valid and binding upon her, and by the provisions of the constitution of the United States may be enforced against her, though in another state."

In *Tinker v. Tinker,* 144 Okla. 97, 290 Pac. 185, the court had before it the question of whether or not the person seeking the original decree of divorce could, by removal to another state, establish the domicile of herself and child awarded to her custody by the decree, and defeat the continuing jurisdiction of the court to modify the decree in so far as it applied to the custody of the child. It was held that the jurisdiction was a continuing one, and that the court could make proper orders pertaining to the subject matter, such as an order to return the child to the territorial jurisdiction, the enforcement of such an order being on the courts of the new domicile state.

In *Meredith v. Krauthoff,* 191 Mo. App. 149, 177 S. W. 1112, the trial court had granted a divorce decree and then considered the granting of a subsequent petition for the change of custody from mother to father. The change was

objected to on the ground that the father had changed his domicile from Kansas City to Washington, D. C. In passing, it was stated by the court:

"The divorce suit and decree therein rendered in the circuit court of Jackson county vested jurisdiction in said court to pass upon the custody of the child, and that jurisdiction continues until the boy reaches his majority. [*Wald v. Wald,* 168 Mo. App. 377.] Both parents were parties to the divorce suit and hence are personally bound by its decrees and orders. And those orders are controlling upon and will be recognized by the courts of other States. So that a removal of the child to Washington City is not a taking of the child beyond the jurisdiction of the court in the sense that the court would thereby lose jurisdiction to change its order in the future should subsequent events require it. The jurisdiction of the court over the child will not be ousted thereby. [*State ex rel. v. District Court,* 128 Pac. 590, l. c. 593; *Morrill v. Morrill,* 77 Atl. 1; *Stetson v. Stetson,* 80 Me. 483, l. c. 485; *Bailey v. Schrader,* 34 Ind. 260; *Wakefield v. Ives,* 35 Iowa, 238.]"

These decisions compel the conclusion that the court of common pleas of Summit county, Ohio, had jurisdiction to change the custody of Joseph D. Mullins, Jr., from his mother to his father, regardless of the fact that the boy and his mother were in the state of Washington at the time the orders were made. To hold otherwise would be to put a premium upon wrongdoing by allowing a parent to gain an advantage by disobeying the orders of a court.

The decisions of this court respecting the custody of children brought into this state by a parent in cases alike or similar to the one at bar are not in accord.

*Kentzler v. Kentzler,* 3 Wash. 166, 28 Pac. 370, 28 Am. St. 21, is a decision denying a writ of *habeas corpus* to obtain the custody of minor children of the parties. It appears that the trial court permitted parol evidence to be introduced regarding a decree of divorce allegedly granted by a Montana court whereby the custody of the children was awarded to the petitioning wife. This court held the admission of such testimony was error, but determined the custody controversy on the merits, stating that the welfare of the children was the guiding factor, and awarded custody to the

respondent father. Thus, it may not be said that here was a denial of full faith and credit of the Montana decree, for under the ruling on the evidence no decree was considered. Under these conditions, the alleged surreptitious removal of the children by the father was not misconduct or contemptuous of a decree not recognized.

*Koontz v. Koontz,* 25 Wash. 336, 65 Pac. 546. This case, while laying down the rule that, in a custody controversy, the welfare of the minor child is the controlling factor, makes a statement relevant to the issues in the case at bar in two respects; namely, the force and effect of such an award, and the limits of consideration of factors and circumstances upon which a petition to modify may be predicated. In rendering its decision, the court stated:

"The appellant states the law correctly in his brief when he says that, 'a decree of the superior court, which determines the custody of infant children, from which no appeal has been taken, is conclusive upon the court which rendered the decree and upon all other courts, in the absence of a material change in the condition and fitness of the parties, *or the requirements for the welfare of the child,' Dubois v. Johnson,* 96 Ind. 6. When the decree was rendered the court did not know, and it was not foreseen, that the frequent changes in the custody of the child would affect its health and disposition. When this fact was shown by *subsequent* events, it was the duty of the court, in the interest of the child, to change its decree. The case of *Reid v. Reid,* 74 Iowa, 681 (39 N. W. 102), cited by appellant, holds that the decree is *res adjudicata* as to all matters before the court, and can be modified only upon a showing of *new circumstances and conditions* which require a modified decree to meet the new conditions."

True, this was said in a case where no decree of a sister state was involved, yet these statements are fundamental and applicable in any case. It is not unfair to assume that the court meant to include the courts of sister states under the laws of comity when it made the statement as to the binding effect of a decree of the superior court.

In *In re Groves,* 109 Wash. 112, 186 Pac. 300, it appears that Harry Groves and Lena B. Groves, parties to this action, were divorced in a Colorado court. Both parties appeared;

custody of their child was given to the maternal grandmother, then resident in Bellingham, Washington. The husband acquiesced to, and paid alimony under the decree of divorce, and the child's expenses to Washington. About six months after the decree became final, the father petitioned the court of original entry for modification and was awarded the custody of the child. Notice of this proceeding was given the ex-wife, who then, with the.child, was domiciled in Washington. It was this order of modification which was sought to be enforced. The court stated, in denying the writ and awarding the custody of the child to the mother, that, under the circumstances, the Colorado order was not entitled to full faith and credit under the comity rules, in that they were not applicable here

". . . because the modification of the decree was based upon substituted service without the state, made after both the mother and child had become domiciled in Washington. The weight of authority is to the effect that, when the child has become domiciled in another state, the courts of the place of domicile may, at the least, determine the custody of such child as its welfare may demand, in all cases where there are shown changes of conditions arising subsequent to the entry of the original decree. [Citing cases.]"

The court then continues to decide the case by saying:

"In any event, a change of conditions is set up in Mrs. Barto's [legal custodian] return to the writ which was sufficient to justify the trial court in hearing the case on its merits."

The decision finally hinged on the result of the weighing of the facts.

*McClain v. McClain,* 115 Wash. 237, 197 Pac. 5, 202 Pac. 173, involved the custody of a minor child of the parties who had been awarded alternately to the parties by the divorce decree. The decree, entered in a Texas court, provided that the parties were to have the minor in their custody during alternate months until further order of the court. During one of such monthly periods of custody, the father moved from Texas to Oregon, and later, to Washington. The mother did not know of this departure until she attempted

to obtain the return of the boy the following month. She did not locate the ex-husband and the minor for four years; when she did find them, she instituted action to recover custody in compliance with the Texas decree.

The court, in reversing the trial court's action in awarding custody of the child to the respondent, after a hearing on the merits relative to the suitability of both parents to have the custody of the child, states that the guiding factor is the welfare and best interests of the minor in making such an award.

It will be noted that in this case, when the minor was removed from the territorial jurisdiction of the Texas court, it was technically in the legal custody of the father; in that respect the case is similar to the case at bar. It follows then, that, as in the instant case, while the removal was technically legal, the withholding was wrongful only by the terms of the Texas decree, thus excluding the criminal angle of kidnapping. The jurisdiction of the Texas court as affecting its authority to enter either the original decree of divorce, or the order in the contempt proceeding subsequent to the child's removal, was not questioned in the case. This court exercised its sovereign right to adjudicate the controversy over custody of the child on the merits of changed circumstances by reason of the presence of the parties and the subject matter (the minor). The welfare of the child seems to have been the paramount factor considered, together with the conduct of the father in the removal and withholding of the child in derogation of the rights of the wife. That this was not a question of honoring the judgment of the Texas court under the comity laws, is evidenced by this excerpt from the opinion:

"Notwithstanding the father's course is to be condemned, yet if we were of the opinion that it were for the best interest of the boy to leave him with the father and stepmother we would so order."

*Lanctot v. Lanctot*, 125 Wash. 310, 216 Pac. 356. This case points out that the statute, Rem. Comp. Stat., § 995-2, requiring application to modify a decree of divorce as to the custody of a child of divorced parents to be brought in the

county where the child or parent having the custody resides, was not intended to affect the continuing jurisdiction over children by the court granting the decree, where such child and parent having the custody are beyond the territorial limits of the state. In so finding, the court said:

"It is the settled law of this state that the jurisdiction of the court rendering the decree of divorce is continuing as to the custody of children of the parties and as to awarding periodical allowance in favor of one party as against the other. *Koontz v. Koontz,* 25 Wash. 336, 65 Pac. 546; *Fickett v. Fickett,* 39 Wash. 38, 80 Pac. 1134; *Poland v. Poland,* 63 Wash. 597, 116 Pac. 2; *Dyer v. Dyer,* 65 Wash. 535, 118 Pac. 634; *Delle v. Delle,* 112 Wash. 512, 192 Pac. 966, 193 Pac. 569.

". . . it [the statute] does not mean that, when the party against whom such relief is sought is entirely beyond the limits of the state, having the custody of the child also beyond the limits of the state, this incidental continuing jurisdiction of our courts in divorce proceedings is thereby taken away so as to leave the other party without right to relief at the hands of the court in which the divorce decree was rendered."

This case has been followed in *Treosti v. Treosti,* 168 Wash. 672, 13 P. (2d) 45; *State ex rel. Shallenberger v. Superior Court,* 174 Wash. 627, 25 P. (2d) 1041; *State ex rel. Ranken v. Superior Court,* 6 Wn. (2d) 90, 106 P. (2d) 1082.

In the case of *Motichka v. Rollands,* 144 Wash. 565, 258 Pac. 333, the court passed upon an application for a writ of *habeas corpus* to recover the custody of a minor child of the parties, pursuant to the original divorce decree granting such custody to the applicant. The respondent was plaintiff and the petitioner was defendant in the original action in Montana, both being domiciled there and present at the trial either in person or by counsel. The parties had two children, who were minors. The custody of one was given to the mother, and the custody of the other was given to the father. Alternate rights of visitation were granted the parents regarding the child of whom the custody was granted to the other party.

At all times subsequent to the decree, the father, petitioner in the action, and the child, Eva Irene, whose custody

reposed in him, continued to reside and make their home in Montana. The respondent wife, shortly after the entry of the Montana decree of divorce, removed to Chelan, Washington, took up her residence, and established her domicile there, having with her the other minor child of the parties, custody of which had been granted to her. She later married a man named Rollands. Pursuant to the alternate rights of visitation granted by the decree, the child, Eva Irene, was sent from her home in Montana to the home of her mother in Chelan, Washington. Upon the expiration of the allotted visitation time, the respondent failed to return the child to the petitioner in Montana. Request was made for her return both by letter and personal visit of petitioner. Respondent steadfastly refused to deliver the child, which refusal occasioned the *habeas corpus* action.

The action was defended on the ground that the Washington court had jurisdiction of the person of the child, therefore, it could hear and determine the custody issue and was not bound to necessarily recognize the Montana decree. The trial court upheld this contention, denied the mandate of the Montana decree, and awarded the custody to the respondent.

This court, in reversing the case, had this to say:

"It seems to us that the trial court has erroneously ruled, or in any event erroneously assumed, that this constitutional mandate [§ 1, Art. 4, U. S. Const.] is of no controlling force in this case, because Eva Irene is physically within the territorial jurisdiction of that court; and that, therefore, the divorce decree of the Montana court awarding her custody to appellant may be ignored here, upon showing of change of conditions since the rendering of the Montana decree of divorce.

"It may be assumed that the general sovereign guardianship of the state is such that it extends over the persons of all minors residing or domiciled within its borders, even to the extent of not being bound by a judgment of a sister state rendered with reference to the personal guardianship of a minor while a resident and domiciled in such sister state. It may also be assumed that the general sovereign guardianship of the state is such that it extends to the temporary protection of all nonresident minors, while tem-

porarily in the state. But no decision has come to our notice holding or suggesting that the courts of one state may permanently assume general guardianship over a minor temporarily sojourning in the state, who is a resident of, or has its domicile in, another state. . . . It seems to us that, under the circumstances here shown, the decree of the Montana court awarding Eva Irene to appellant must be given full faith and credit and recognized as a final adjudication on that question, until modified by that court, or until Eva Irene ceases to have her residence and domicile in the state of Montana.

"Much is said in the brief of counsel for respondent touching the present welfare of the child, in the light of what is claimed to be changed conditions of the parties and of the child since the rendering of the Montana divorce decree. Were it necessary to go into that particular phase of the controversy, much apparently well grounded argument could be advanced both for and against the desirability of change of the custody of Eva Irene; *but that, we think, is foreign to our proper inquiry here to be made, in view of the fact that Eva Irene is not, and never was, a resident of or domiciled in the state of Washington, but has always, since her birth, been a resident of and domiciled in the state of Montana.*" (Italics supplied.)

Thus, this case is authority for the rule that mere physical presence of a minor child is not sufficient reason for the court to accept jurisdiction and proceed to take evidence relative to change of custody in a proceeding brought to enforce a *valid* order of a sister state regarding that custody. The court indicates that, in a proceeding brought for the purpose of changing custody, wherein the child was domiciled within the territorial jurisdiction, then the court would proceed to hear argument going to prove *change of circumstances* subsequent to the entry of a valid order in a sister state.

All the case says in the final analysis is that this court will give recognition to a valid judgment of a sister state entered in a divorce proceeding under the comity laws of the nation; further, that in a proceeding to accomplish that objective, the courts of this state should not sit as courts of review on matters already adjudicated by the courts of a

sister state, leaving the parties to their remedies as afforded in that jurisdiction by appeal or otherwise.

In the case of *In re Penner,* 161 Wash. 479, 297 Pac. 757, this court reversed an order of the trial court dismissing an application for a writ of *habeas corpus* to obtain the custody of minor children of the parties. It appears that the petitioner, the father of the minors under consideration, was awarded their custody in a divorce action in the state of Montana. The respondent wife, plaintiff in that action, being dissatisfied with the ruling of the trial court in a subsequent action for modification regarding custody of the minors in the original court, surreptitiously removed them to this state, after a visit in Canada, and secreted them for a period of three years. Upon discovering their whereabouts, the father brought an action to regain the legal custody established by the Montana court in the original decree.

The court, in reversing the case, discussed the right of the trial court to hear the question of custody on the merits and made this observation by way of concluding that such action was proper:

"In such a case as this, the welfare of the children is the chief consideration, and *in view of the length of time which had elapsed since the entry of the Montana decree, the court was justified in hearing testimony on the merits* for the purpose of ascertaining whether or not any change had taken place in the circumstances which would require of a court of this state, to promote the best interests of the children, the entry of an order different from that entered by the Montana court." (Italics ours.)

The court then proceeds and distinguishes this case from *Motichka v. Rollands, supra,* purely on the same grounds by which it sanctioned the hearing of the case on the merits; namely, the above-italicized portion. This case, then, is not authority for overturning the ruling in that case but, rather, suggests that every case of this nature must stand on its own merits, taking into consideration the circumstances. It will be noted that the court, in the *Penner* case, considered the *change* of circumstances which might affect the question of custody and found nothing to warrant a change of

custody and, therefore, granted the writ and awarded the physical possession of the minors to the petitioner.

In *In re Burns,* 194 Wash. 293, 77 P. (2d) 1025, 72 A. L. R. 441, an action was brought by the father of a child, seeking through a writ of *habeas corpus* to have the child returned to the state of California pursuant to a divorce decree entered in that state, which decree awarded the custody of the child to the mother on condition that it might not be taken out of the state except by written permission of the other party, or by order of the court. It appears that written permission was given by the father for the child to be taken out of the state by the mother *"on a business trip for an indefinite period."* Pursuant to this authority, the mother went to Seattle, Washington, where she became domiciled, married, and refused to return the child to California. This court stated regarding the written permission given by the father for removal of the child from the state in which the original divorce decree was entered: "The agreement connotes consent to a temporary sojourn only." And further in the opinion says:

"In view of the fact that consent to the removal of the child was given only for a temporary period, that is, for a business trip, the child is still domiciled in the state of California." (Citing *Motichka v. Rollands, supra,* as authority for making that statement.)

From this, it might well be argued in the case at bar that, in view of the fact that the mother as legal custodian of the child was awarded permission by the Ohio court to take the child to the Pacific coast for a vacation not to exceed two months, the domicile of the child is still in Ohio. The cases are parallel in this respect.

In the case under discussion, the court, in considering the comity rules under the full faith and credit clause of the constitution of the United States, said:

*"While judgments of sister states relating to the custody of minor children are not binding upon this court,* still we conclude that, in the instant case, the welfare of the minor child will be best served by giving effect to the decree of the California court relating to the custody of the child and by returning him to California." (Italics ours.)

The court then justifies that decision by saying:

"If we should not allow the California court, which originally had jurisdiction of the parties, to determine the custody of the child under the changed circumstances, we would encourage the taking of children from one jurisdiction to another, and thus invite interminable litigation over the custody of minor children, and by thus placing the custody of minors in an inchoate condition would seriously interfere with the welfare of children."

Thus, it appears that this court in that case completely denied that this court is bound to recognize the judgments of a sister state in so far as child custody is concerned. (See italicized portion of the quotation.) And while taking the view that the best interests of the minor is the sole and controlling factor in the solution of a custody controversy, the court incidentally considered its decision expedient to forestall "interminable litigation over the custody of minor children."

It appears further that the court took the position that a legal custodian of a minor, legally removing the child from the domicile state originally entering the custody award, may not establish a new domicile for the child in another state. In effect, the decision holds that both the jurisdiction over, and the domicile of, the child are continuing in the original state of domicile. It is hard to reconcile these statements with the *Groves* case, *supra*. The opinion attempts to distinguish on the ground that the order in that case was *ex parte*, and that the removal was sanctioned and condoned. This appears to be a distinction without a difference.

In *State ex rel. Ranken v. Superior Court*, 6 Wn. (2d) 90, 106 P. (2d) 1082, this court allowed a petition for modification to be filed in the original action to determine the custody of three minor children of the parties upon their return into the jurisdiction from a sister state, they having been absent at the time of the entry of the decree of divorce, which decree was silent as to the minors' custody. This court held that the original jurisdiction conferred by statute on the court was continuing, and that the presence of the

minors in the jurisdiction was sufficient to give the court authority to adjudicate as to them. We said in that regard:

"Although two of the minor children were absent from this state at the time that the interlocutory order and the final decree were entered, that fact does not militate against our present holding. It is true that domicile of minor children within the forum is a prerequisite to jurisdiction to make any decree relative to their custody. *In re Groves,* 109 Wash. 112, 186 Pac. 300; 2 Beale, Conflict of Laws, 717, § 144.3. But, as we have repeatedly held, an action for divorce carries with it, as part of its subject matter, the question of custody and support of minor children of the marriage, and when such children come into the state, the court obtains jurisdiction of their persons. Thus, the court in this proceeding had complete jurisdiction of both the subject matter and the parties, to the extent thus far considered."

In *Jones v. McCloud,* 19 Wn. (2d) 314, 142 P. (2d) 397, the parties were divorced by a decree awarded in an Oregon court. The custody of two minor sons was given to the father, with the privilege granted to the mother to have the youngest son, the child in controversy in this proceeding, during the summer school vacation period. The mother, while having temporary custody, removed the child to Kitsap county, Washington, and refused to return him to his father in Oregon. The father thereupon brought an action to recover custody of the child. The trial court denied the prayer of the complaint and awarded custody to the ex-wife. This court, in reversing the judgment of the trial court, placed its ruling squarely on the holding of the *Rollands* case, *supra,* stating:

"While this court, in several cases to which we shall refer, has held that the courts of this state have jurisdiction, in a proper case, to hear all relevant testimony offered by either party in regard to the custody of a minor child domiciled in this state, and enter such judgment as will be for the best interests of the minor, even though the judgment be different from that entered by a sister state, where it is shown to the courts of this state that the condition of the parties has so changed since the entry of the judgment by the sister state that the welfare of the minor requires that the courts of this state hear and determine the question presented; yet we think that, included in the question pre-

sented, there is really the further question of whether or not the minor did in fact have a residence or a bona fide domicile in this state."

The court then cites the *Groves* case, *supra,* as authority on domicile in this manner:

"It is apparent that in the cited case the child had been brought to Washington pursuant to the decree of the Colorado court, and there is no question but that the bona fide domicile of the minor had been sufficiently established to be in this state."

It will be remembered in this connection that the award of custody in the *Groves* case provided for that custody to be in a third party, the maternal grandmother, in the state of Washington. The court then continues on the question of domicile in the following language:

"The cited cases show clearly that, before the courts of this state will enter a decree different from that entered by a sister state relative to the custody of a minor domiciled in good faith in this state, the changed condition of the parties claimed to have occurred since the entry of the original decree must be a real and substantial change and one which really affects the welfare of the minor."

After stating that no subsequent change of conditions existed within the rule of "real and substantial change and one which really affects the welfare of the minor," the court said:

"In this case the residence and domicile of appellant having at all times been in Oregon, and it appearing that under the divorce decree the custody, care, and control of the minor was awarded to appellant, and it further appearing that respondent, under the decree, was only permitted to have the minor during the months of June, July, and August, and that, at the time she obtained possession of the minor, it was with no thought on the part of appellant that she would take him out of the state, or that it was to be other than a temporary possession, the minor never became a resident of, nor can it be said he was domiciled in, the state of Washington, regardless of what respondent may claim relative to her having become a resident of this state. The residence and domicile of the minor remained in the state of Oregon, where appellant resided and was domiciled."

It will be noted that the above case differs from the case at bar in that the wife in that case surreptitiously removed the child from the Oregon jurisdiction while the legal custody was in the father by virtue of the original decree, whereas, in the case at bar, the wife removed the child from the Ohio jurisdiction by virtue of the express permission of the court while she was the legal custodian named in the original decree. It is at once apparent that, in the case at bar, there was neither temporary custody nor surreptitious removal involved, both of which elements existed in the case under discussion.

No definite rule can be laid down which will meet the approval of all of the cases to which we have just referred. It becomes necessary to adopt a rule that is in keeping with most of our cases and which reflects the decided weight of authority.

We now hold that the decrees of a court of a sister state must be given full credit in cases in which the court of the sister state has jurisdiction, and that we will not consider the change of custody of children whose custody has been determined by that decree, until such time as the children become domiciled in this state. This is in keeping with our recent decision in the case of *State ex rel. Marthens v. Superior Court*, 25 Wn. (2d) 125, 169 P. (2d) 626.

In so holding, we do not lose sight of the fact that the welfare of the children is of supreme importance. We are conscious that the courts of sister states are as well able to make provision for the children as are we.

As heretofore noted, the courts of an asylum state will take jurisdiction of a case concerning the custody of children though their custody has been determined by the court of a sister state, if the children have become domiciled in the asylum state.

Was Joseph D. Mullins, Jr., domiciled in the state of Washington at the time his father applied for a writ of *habeas corpus*?

Of what domicile consists, is a much controverted question. The textbooks and decisions are full of unsatisfactory definitions of the term "domicile," the tendency being to

adopt any definition which will fit the immediate case at hand. The discussion on p. 40 of Kennan's "Residence and Domicile," is peculiarly appropriate, where he quotes from Dicey:

" 'The term "domicile" is a name for a legal conception, based upon, and connected with, the idea of home, but containing in it elements of a purely legal or conventional character. Whether a place or country is a man's home, is a question of fact. Whether a place or country is a man's domicile, is a question of mixed fact and law, or rather of the inference drawn by law from certain facts, though in general the facts which constitute a place a man's home are the same facts as those from which the law infers that it is his domicile.' "

▮ Thus it seems that the term "domicile" denotes the relation of a person to a place. In the event that a given place, by reason of certain facts then found to be existent, is characterized by the legal term "domicile" and is called by the individual his "home" or his "residence" then those terms are included in the term "domicile." "Home" or "residence" implies the exercise of the exclusive privilege of selection by an individual, whereas "domicile" implies a man's legal relation to a place after such selection. Ordinarily, this legal relation characterized as "domicile" is applied for the purpose of defining the obligations and duties to society owed by the individual, and in turn, those owed by society to him. Such a connotation has been given to the use of the word "residence" in statutes generally. Statutory "residence" is equivalent to domicile. Especially is this true with regard to the subjects of voting, taxation, eligibility to office, jurisdiction in divorce, probate and administration, and various others.

The terms "residence" and "home" are not synonymous with domicile, even though they may be and generally are included in the term. Domicile, then, is "residence" or "home" plus something more. That "something more" is a legal inference gathered from all the relevant facts, such as physical presence, declared intention, conduct, etc.,—in reality, all the surrounding circumstances from which it can be determined that a domicile exists.

■■ It is elemental that every man must have a domicile somewhere, and that the presumption is against a change of domicile; therefore, the burden of proof rests upon the one alleging such change. While physical presence and declared intention may be enough to overcome the presumption of continuing domicile in the sister state, it is not enough to warrant the inference of domicile and concomitant jurisdiction in this state, when challenged.

Traditional formulas require conjunction of physical presence and intention to remain permanently in the new location to bring about a domiciliary change. There is usually no question as to the first of these two elements; the conflict is usually confined to the element of intention—whether or not a sufficient intention is shown by the facts. In determining the sufficiency of intention, a proper subject of inquiry is the bona fides of that intention—in other words, do the facts support the self-serving declaration of intention in such a way that that intention can be said to be genuine or bona fide.

■■ Of course, the child, Joseph Mullins, Jr., could not exercise his intention of changing his domicile from the state of Ohio to the state of Washington. Neither was he able, because of his minority, to express an intention of making his home and residing in the state of Washington. It is evident then, that his domicile, if he has one in this state, must have been secured to him by his mother. All reasonings and ideas of fair play and justice demand a holding that a parent acting in disobedience to an order of a court, cannot secure a new domicile for his or her child.

We hold that Joseph D. Mullins, Jr., was not domiciled in the state of Washington at the time his father applied for the writ of *habeas corpus*; that the orders and decrees of the Ohio court are binding upon the courts of this state; and that the writ should be granted.

Judgment reversed.

ALL CONCUR.