[No. 43460.    En Banc.    July 24, 1975.]

*In the Matter of the Marriage of* ROBIN L. SAUCIDO, *Petitioner, and* JOHNNIE SAUCIDO *et al, Respondents.*

*Edward A. Hibbard*, for petitioner.

*Paul J. Kleinwachter* (of *Rush & Hayes*), for respondent Bravo.

HOROWITZ, J.—Robin L. Saucido seeks review by writ of certiorari of an order of the Pierce County Superior Court directing her to relinquish physical custody of her son, Juan A. Saucido, a minor, to Lidia Bravo, grandmother and guardian of the child under letters of guardianship issued in Arizona.

On May 17, 1973, respondent Lidia Bravo on her petition was appointed guardian of the person of Juan A. Saucido, a minor, by order of the Superior Court for Maricopa County, Arizona. Letters of guardianship were issued on the same day. The guardianship order recited that, when the guardianship proceedings were instituted, Robin L. Saucido, the child's mother, was not residing in Arizona, her whereabouts were unknown, and the father, Johnnie

Saucido, was under sentence of imprisonment in the Arizona state penitentiary. The whereabouts of the mother being unknown, the Arizona statute required that only the child's relatives residing in Maricopa County, Arizona, be given notice of the guardianship proceedings. Such notice was given. Accordingly, Robin L. Saucido did not receive notice in that proceeding either personally or by publication.

On October 30, 1973, Robin L. Saucido filed a petition for writ of habeas corpus in the Maricopa County Superior Court for return of the child. The court denied her petition on December 18, 1973. Instead of appealing the denial of her petition or instituting a separate action to remove Lidia Bravo as guardian, as suggested by the court in the habeas corpus action, Robin L. Saucido returned to Washington. Subsequently, however, she returned to Arizona, and in February 1974 took physical possession of the child, returning with him to Washington. Her action in doing so was without permission of Lidia Bravo, the child's court-appointed guardian, and was in violation of the guardianship order.

On April 4, 1974, Robin L. Saucido filed a petition in Pierce County, Washington, for dissolution of her marriage to Johnnie Saucido, naming also Lidia Bravo as a party respondent. On August 19, 1974, a court commissioner entered findings of fact and conclusions of law, refusing to determine the merits of the change of child custody requested on the ground the child was brought to Washington in violation of a valid guardianship order entered in Arizona. The commissioner also ordered petitioner to deliver the child to Remann Hall and in turn to the Arizona guardian. On August 29, 1974, the Pierce County Superior Court entered an order adopting as its own the findings, conclusions and order of the commissioner.

Petitioner contends the trial court erred in declining jurisdiction to consider the merits of the requested change in custody. We disagree.

Petitioner does not challenge finding of fact No. 7, which reads:

> That thereafter she returned to the State of Arizona, and in February of 1974 in disobedience of an Order of the Court of the State of Arizona and without the permission of the Guardian of Juan A. Saucido, took the child, Juan A. Saucido, from Lidia Bravo and returned with him to the State of Washington.

Accordingly, that finding must be accepted as an established fact of the case. ROA I-43.

■ The Washington decisional rule is that jurisdiction to determine or change permanent child custody depends on the child's domicile. *Chandler v. Chandler*, 56 Wn.2d 399, 353 P.2d 417 (1960); *In re Mullins*, 26 Wn.2d 419, 174 P.2d 790 (1946). However, it has been held the courts of this state will not assume jurisdiction to examine the merits of a requested permanent custody change if the child is brought into Washington, or retained here, in violation of a valid permanent custody decree of another state. As stated in *In re Mullins, supra* at 445:

> All reasonings and ideas of fair play and justice demand a holding that a parent acting in disobedience to an order of a court, cannot secure a new domicile for his or her child.

This "clean hands" doctrine, widely followed, serves to discourage child snatching, forum shopping, and repeated litigation of custody awards when one parent is dissatisfied with the first permanent custody award, or simply wishes to use the child as a weapon to inflict punishment on the other parent. A. Ehrenzweig, *Conflict of Laws* § 88 (1962); R. Weintraub, *Commentary on the Conflict of Laws* 197-99 (1971); Restatement (Second) of Conflict of Laws § 79, comment c at 239 (1971); Uniform Child Custody Jurisdiction Act § 8 (1968); Ehrenzweig, *Interstate Recognition of Custody Decrees*, 51 Mich. L. Rev. 345 (1953); Annot., 4 A.L.R.2d 7, §§ 26-29 (1949); Annot., 107 A.L.R. 642 (1937).

Before we conclude the "clean hands" doctrine applies here, we must determine whether the Arizona guardianship

order is valid and binding on petitioner, Robin L. Saucido, so as to be entitled to full faith and credit in this state.

█ The legal commentators disagree concerning the extent to which the full faith and credit clause requires effect be given to sister state child custody decrees.[1] Washington, as in the case of a majority of the courts, holds a permanent child custody award by the court of a sister state having jurisdiction of the parties and of the subject matter is entitled to full faith and credit. *In re Rankin*, 76 Wn.2d 533, 458 P.2d 176 (1969); *In re Mullins, supra*; Annot., 35 A.L.R.3d 520, § 3(a) (1971). Washington further holds its courts may modify a permanent custody decree upon a showing of changed circumstances if it be shown the jurisdictional basis exists in Washington for that purpose. *In re Rankin, supra. See In re Groves*, 109 Wash. 112, 186 P. 300 (1919).

Petitioner contends the Arizona guardianship decree is void as violative of due process because entered without notice to her, actual or published. She cites *In re Luscier*, 84 Wn.2d 135, 524 P.2d 906 (1974) to emphasize that custody of one's children is a fundamental right. She further argues the Arizona guardianship order is not entitled to full faith and credit because when the order was entered she was neither domiciled, resident, nor present in Arizona, so as to confer jurisdiction upon the Arizona court to deprive her of the custody of her minor child. She relies on *May v. Anderson*, 345 U.S. 528, 97 L. Ed. 1221, 73 S. Ct. 840 (1953); *Weber v. Weber*, 6 Wn. App. 722, 496 P.2d 576 (1972); *Pickler v. Pickler*, 5 Wn. App. 627, 489 P.2d 932 (1971).

---

[1] A. Ehrenzweig, *Conflict of Laws* §§ 87-89 (1962); R. Leflar, *American Conflicts Law* § 246 (1968); R. Weintraub, *Commentary on the Conflict of Laws* §§ 196-97 (1971); Ehrenzweig, *Interstate Recognition of Custody Decrees*, 51 Mich. L. Rev. 345 (1953); Ratner, *Child Custody in a Federal System*, 62 Mich. L. Rev. 795 (1964); Stansbury, *Custody and Maintenance Law Across State Lines*, 10 Law & Contemp. Prob. 819 (1944); Stumberg, *The Status of Children in the Conflict of Laws*, 8 U. Chi. L. Rev. 42 (1940); Note, *Full Faith and Credit to Child Custody Decrees*, 73 Yale L.J. 134 (1963); Comment, *Full Faith and Credit to Judgments: Law and Reason Versus the Restatement Second*, 54 Calif. L. Rev. 282 (1966).

Respondent, in defense, argues any defects in the Arizona guardianship proceeding were cured by the habeas corpus action brought by petitioner in Arizona to obtain custody of the boy. In Arizona, a writ of habeas corpus is available to test the legality of the detention of an individual; but the application for the writ may also be used to invoke the court's equity powers to determine the custody of a child. In the latter case, the issue is the welfare of the child, not his personal liberty. *State Dep't of Pub. Welfare v. Barlow*, 80 Ariz. 249, 296 P.2d 298 (1956); *In re Winn*, 48 Ariz. 529, 63 P.2d 198 (1936). Respondent contends that, in petitioning the court for a writ of habeas corpus, petitioner was invoking the equity jurisdiction of the court to determine issues of custody on the merits. However, the record shows the writ was used only to test respondent's legal right to detain the child from petitioner.[2]

■ The Arizona court did not dismiss Mrs. Saucido's petition; it denied her request the child be returned to her. Thus, it necessarily held the previous guardianship order was binding upon petitioner. Because the court had jurisdiction over the subject matter and the parties in that habeas corpus action, the order, from which petitioner did not appeal, even if erroneous, is a valid and binding order in Arizona and is entitled to full faith and credit in this state. *In re Mullins, supra; Treinies v. Sunshine Mining Co.*, 308 U.S. 66, 84 L. Ed. 85, 60 S. Ct. 44 (1939); A. Ehren-

---

[2]Attorney Robert L. Gottsfield, who represented Lidia Bravo in the habeas corpus action, and whose affidavit was used below to show the nature of the habeas corpus proceeding, stated:

We argued, and the Court so held, that in view of the fact there had been a Finding that the child needed a guardian in a previous case before the Superior Court, Maricopa County, being Cause No. T95654 [the guardianship proceeding]; that the Court had already appointed Mrs. Oscar Bravo (Lidia Bravo) as that Guardian, and made a determination that she was the proper person to have custody of the child; that, therefore, as Mrs. Bravo properly had custody of the child under the previous Order of the Court, the child was properly in her custody under her Letters of Guardianship and that only a petition to remove her as Guardian could be entertained by the Court, at which time reasons would have to be given why she should be removed as Guardian.

zweig, *Conflict of Laws* § 63, at 222 (1962); R. Leflar, *American Conflicts Law* § 77 (1968); Restatement (Second) of Conflict of Laws § 106 (1971); Restatement of Judgments § 7, comment *b* (1942).

■ Petitioner also contends the requirement that a minor child must be domiciled in this state in order that the court may have jurisdiction to determine his permanent custody has been changed by RCW 26.09.180(1)(a)(ii). That statute, *inter alia*, permits the filing by a parent of a petition seeking child custody "in the county where the child is permanently resident or where he is found." The statute in describing the county in which the petition for child custody is to be filed, deals both with the case of a child where he is "permanently resident" and a child "where he is found." It is arguable the quoted phrases are intended for venue purposes to deal both with permanent and temporary child custody awards. A permanent child custody award, including a change in such award, requires the child be domiciled in this state. A temporary child custody award requires only the child's physical presence in the county where he is found. *Motichka v. Rollands*, 144 Wash. 565, 258 P. 333 (1927) (dictum); Restatement of Conflicts §§ 118, 146, comment *c*, 150 (1934).

In determining the purpose of using the phrase "where he is found" in RCW 26.09.180(1)(a)(ii), it seems more likely than not, in the absence of a clearer statement of legislative intention on so important a matter, that no change in the jurisdictional basis for an award of permanent child custody was intended. The phrase "where he is found" is adequately explainable without supplanting the requirement of child domicile in cases involving permanent child custody awards. So understood, RCW 26.09.180(1)(a)(ii) merely reflects a legislative determination that when the child custody issue is not ancillary to a petition for dissolution, legal separation, or declaration of invalidity, it is appropriate to place venue in the county where the child resides or in the county where he is found. *See* Rieke, *The Dissolution Act of 1973: From Status to*

*Contract?* 49 Wash. L. Rev. 375, 420 (1974). Such a venue provision does not require the law be deemed changed to permit an award of permanent child custody on the basis of mere physical presence. Accordingly, the trial court cor-rectly held the child's domicile by virtue of the "clean hands" doctrine described in *In re Mullins, supra,* had not been changed to Washington so as to confer on the superior court the power to enter a permanent child custody decree.

We are aware that, although domicile remains a widely-recognized basis for permanent child custody jurisdiction, there is considerable support for the view there are non-domiciliary contacts with a state which may provide a suf-ficient basis for permanent child custody award jurisdic-tion. *See* A. Ehrenzweig, *Conflict of Laws* § 86 (1962); R. Weintraub, *Commentary on the Conflict of Laws* 194-96 (1971). These nondomiciliary contacts include (1) in per-sonam jurisdiction over the contesting parties for custody; and (2) the presence of the child in the forum. *See* Re-statement (Second) of Conflict of Laws § 79 (1971); Uni-form Child Custody Jurisdiction Act § 3 (1968); *see also Sampsell v. Superior Court,* 32 Cal. 2d 763, 197 P.2d 739 (1948).

■ Whatever the jurisdictional basis, the same "reason-ings and ideas of fair play and justice" applied in *In re Mullins, supra,* would preclude a Washington court from determining the permanent custody of a child brought into this state in disobedience of a valid child custody order of a sister state. Thus, even if we were to determine, which we do not, that the mere physical presence of Juan Saucido in this state was sufficient to confer jurisdiction on a Washing-ton court to make a permanent child custody determina-tion, the Washington court, under the "clean hands" doc-trine, would still be required to decline to exercise such jurisdiction.

Finally, petitioner suggests the rule stated in *In re Mul-lins, supra,* should not be applied because the sister state order sought to be enforced here is one appointing a legal guardian as opposed to a decree awarding permanent cus-

tody to one of the child's parents. No authority is cited to support making such a distinction, and we decline to do so. Restatement (Second) of Conflict of Laws § 79, comment *d* (1971) explains;

> Custody decrees and those appointing a legal guardian of the person create the same sort of relationship between the child . . . and the person to whose care he is awarded . . . *In actual practice, however, no sharp distinction may be drawn between the two kinds of decrees.* Thus, custody of a child is sometimes awarded to a person who is not a parent, and, under a few statutes, a parent may be appointed legal guardian of a child's person.

(Italics ours.)

Affirmed.

STAFFORD, C.J., and ROSELLINI, HUNTER, HAMILTON, WRIGHT, UTTER, and BRACHTENBACH, JJ., concur.

FINLEY, J. (concurring)—This is a troublesome case. My primary concern is that in the court proceedings in Arizona and here in Washington the best interests of the child were never fully considered, evaluated, and judicially determined, with all parties presenting evidence and argument as to which custodian would be most suitable for the child. The original guardianship proceeding was decided essentially by default and the subsequent habeas corpus proceeding apparently did not review the merits of the guardianship award but determined only that the pertinent Arizona guardianship statutes had been complied with. And under the majority opinion, Washington cannot consider the question of which custodian would be in the best interests of the child because the mother violated the "clean hands" doctrine in illegally removing the child from Arizona.

Effectuating the best interests of the child should be the primary concern in child custody cases and this cannot be determined in a one-sided proceeding. Thus, it is obvious that some opportunity should be afforded to the mother to

present evidence on the issue. The crux of this case is whether Arizona or Washington is the appropriate forum to do so.

There is likely to be pertinent evidence in Arizona, but also in Washington, since the mother and child have now been here in excess of 1 year. But regardless of which forum is chosen to hear the matter, either the mother or grandmother will be forced to suffer some financial hardship in traveling to a foreign state to present her case. Yet this was all caused by the mother's actions in illegally removing the child from Arizona. The mother could have appealed from the adverse habeas corpus decision. Alternatively she may now file a petition in Arizona to remove the grandmother as guardian. Arizona thus affords an ample opportunity for the best interests of the child to be fully considered with all parties presenting evidence on the issue.

Therefore I agree, although somewhat reluctantly, with the majority that the mother should pursue her remedy in Arizona and should not have indulged in the illegal action of removing the child from that state. Although perhaps an understandable action on the part of a concerned mother. in the long run such "snatchings" may disrupt and impair the child's education and social environment, particularly if the situation degenerates into a round robin "snatching" contest between opposing parties—leaving the unfortunate child caught in the middle. Accordingly, such actions should not be encouraged. It is realized that unfortunately, but apparently unavoidably, a change in actual physical custody and environment at the present time, as the result of the majority decision in this case, may have a disruptive effect as to the minor child in this case.

For the foregoing reasons, I have signed and concur with the majority opinion.

HUNTER and BRACHTENBACH, JJ., concur with FINLEY, J.