[No. 1782-3.   Division Three.   July 8, 1976.]

*In the Matter of the Marriage of* JAMES REED DUNKLEY, *Petitioner, and* CAROLYN JEAN CURTIS DUNKLEY, *Respondent.*

*Fredrickson, Maxey & Bell, Inc., Carl Maxey,* and *David W. Henault,* for petitioner.

*Cornelius & Cornelius* and *Dan Evich,* for respondent.

McINTURFF, C.J.—Petitioner, James Reed Dunkley, seeks review of an order dismissing his petition to modify a California divorce decree determining custody.

The record supports the following factual summary:

The custody decree, in pertinent part, provides: (1) Mr. Dunkley and Mrs. Dunkley have joint legal custody of their three children; (2) Mrs. Dunkley has physical custody of the children from August 20 to June 20; (3) Mr. Dunkley has physical custody of the children from June 20 to August 20.[1] In September 1975, the children, ages 11, 9, and 7, ran away from Mrs. Dunkley's home in California to Mr. Dunkley's home in Washington. The alleged reason for their flight was Mrs. Dunkley's conduct. Mr. Dunkley then filed an application to modify the custody decree. In sup-

---

[1] In July 1975, the payment of back support and the timely payment of current support was made a condition precedent to Mr. Dunkley's exercise of future visitation privileges.

port of the petition, affidavits were filed by the two oldest children describing in detail serious misconduct of Mrs. Dunkley. Additional affidavits were filed by two psychiatrists who believed that the serious conduct the children complained of was so detrimental to the children's emotional health that they advised against the return of the children. Mrs. Dunkley was personally served with this petition to modify the divorce decree when she came into Washington to retrieve the children. The Superior Court, without taking evidence as to the reason for the children's presence in Washington, dismissed the petition, holding it lacked jurisdiction to modify the California decree. We reverse.

Although the Supreme Court of the United States has left undecided the question of whether the full faith and credit clause of the United States Constitution applies to custody awards by sister states,[2] our court in *In re Mullins*, 26 Wn.2d 419, 174 P.2d 790 (1946), after examining the tortuous course it has navigated between the rock of full faith and credit[3] and the whirlpool of child welfare,[4] chose to face dangers presented by the former obstacle, stating at page 443:

> No definite rule can be laid down which will meet the approval of all of the cases to which we have just referred. It becomes necessary to adopt a rule that is in keeping with most of our cases and which reflects the decided weight of authority.
>
> We now hold that the decrees of a court of a sister state must be given full credit in cases in which the court of the sister state has jurisdiction, and that we will not consider the change of custody of children whose custody

[2]*Kovacs v. Brewer*, 356 U.S. 604, 2 L. Ed. 2d 1008, 78 S. Ct. 963 (1958); *see New York ex rel. Halvey v. Halvey*, 330 U.S. 610, 91 L. Ed. 1133, 67 S. Ct. 903 (1947).

[3]*State ex rel. Marthens v. Superior Court*, 25 Wn.2d 125, 169 P.2d 626 (1946); *Jones v. McCloud*, 19 Wn.2d 314, 142 P.2d 397 (1943); *State ex rel. Ranken v. Superior Court*, 6 Wn.2d 90, 106 P.2d 1082 (1940); *Motichka v. Rollands*, 144 Wash. 565, 258 P. 333 (1927).

[4]*In re Burns*, 194 Wash. 293, 77 P.2d 1025 (1938); *In re Penner*, 161 Wash. 479, 297 P. 757 (1931); *McClain v. McClain*, 115 Wash. 237, 197 P. 5, 202 P. 173 (1921); *In re Groves*, 109 Wash. 112, 186 P. 300 (1919).

has been determined by that decree, until such time as the children become domiciled in this state. This is in keeping with our recent decision in the case of *State ex rel. Marthens v. Superior Court*, 25 Wn. (2d) 125, 169 P. (2d) 626.

> *In so holding, we do not lose sight of the fact that the welfare of the children is of supreme importance.* We are conscious that the courts of sister states are as well able to make provision for the children as are we.

(Italics ours.) The flaw in such a decision was succinctly stated by Mr. Justice Frankfurter:

> Property, personal claims, and even the marriage status (see, *e.g., Sherrer v. Sherrer*, 334 U. S. 343), generally give rise to interests different from those relevant to the discharge of a State's continuing responsibility to children within her borders. Children have a very special place in life which law should reflect. Legal theories and their phrasing in other cases readily lead to fallacious reasoning if uncritically transferred to determination of a State's duty towards children. There are, of course, adjudications other than those pertaining to children, as for instance decrees of alimony, which may not be definitive even in the decreeing State, let alone binding under the Full Faith and Credit Clause. Interests of a State other than its duty towards children may also prevail over the interest of national unity that underlies the Full Faith and Credit Clause. *But the child's welfare in a custody case has such a claim upon the State that its responsibility is obviously not to be foreclosed by a prior adjudication reflecting another State's discharge of its responsibility at another time.* Reliance on opinions regarding out-of-State adjudications of property rights, personal claims or the marital status is bound to confuse analysis when a claim to the custody of children before the courts of one State is based on an award previously made by another State. Whatever light may be had from such opinions, they cannot give conclusive answers.

(Italics ours.) *May v. Anderson*, 345 U.S. 528, 536, 97 L. Ed. 1221, 1228, 73 S. Ct. 840 (1953), concurring opinion.

The harshness of the *Mullins* resolution was mitigated and the preeminence of child welfare in Washington was reestablished in *In re Rankin*, 76 Wn.2d 533, 536-37, 458 P.2d 176 (1969), wherein the effect of an ostensibly valid

California default custody decree was avoided in the interests of child welfare.

The change of emphasis in Washington was given additional impetus when the court observed, albeit in dicta:

> although domicile remains a widely-recognized basis for permanent child custody jurisdiction, there is considerable support for the view there are nondomiciliary contacts with a state which may provide a sufficient basis for permanent child custody award jurisdiction. *See* A. Ehrenzweig, *Conflict of Laws* § 86 (1962); R. Weintraub, *Commentary on the Conflict of Laws* 194-96 (1971). These nondomiciliary contacts include (1) in personam jurisdiction over the contesting parties for custody; and (2) the presence of the child in the forum. *See* Restatement (Second) of Conflict of Laws § 79 (1971); Uniform Child Custody Jurisdiction Act § 3 (1968); *see also Sampsell v. Superior Court*, 32 Cal. 2d 763, 197 P.2d 739 (1948).
>
> Whatever the jurisdictional basis, the same "reasonings and ideas of fair play and justice" applied in *In re Mullins, supra* [26 Wn.2d 419, 174 P.2d 790 (1946)], would preclude a Washington court from determining the permanent custody of a child brought into this state in disobedience of a valid child custody order of a sister state.

*In re Saucido*, 85 Wn.2d 653, 660, 538 P.2d 1219 (1975).

■ Consequently, the *apparent absence of Mr. Dunkley's disobedience to a valid custody decree,* coupled with: (1) the presence of the children in Washington; (2) their charges of serious misconduct by Mrs. Dunkley which would affect the physical, mental, or emotional health of the children; and (3) the personal service of the petition to modify upon Mrs. Dunkley within the state of Washington, motivates us to hold that there was sufficient nondomiciliary contacts to confer jurisdiction on the Superior Court to conduct a threshold hearing to determine why the children fled their mother's home and to provide for their temporary custody pending resolution of the permanent custody dispute.

■ Generally, the parent entitled to custody under an existing decree should be able to enforce that right and

secure the immediate temporary return of the children.[5] However, when a superior court finds upon competent proof, as distinguished from conclusory assertions, clearly compelling circumstances which could justifiably drive the children from the custodial parent, then the court should enter the necessary orders for their protection.[6] This jurisdictional basis for conducting a hearing on temporary custody should not automatically be expanded to the area of permanent custody.[7] To do so would ultimately relegate the law of child custody to the nether world of child snatching and forum shopping.[8]

▮ Hence, the court, after it has provided for temporary custody, should determine which forum is more proper for litigating permanent child custody. The decision as to the proper forum lies in the sound discretion of the Superior Court. In exercising this discretion, it should consider: (1) the importance of (a) discouraging multiple litigation designed to harass an adverse party, and (b) avoiding unnecessary conflicts with the courts of sister jurisdictions; and (2) whether the rights of the parties can best be determined by the court of the sister jurisdiction because of

---

[5]*In re Rankin*, 76 Wn.2d 533, 458 P.2d 176 (1969); *In re Mullins*, *supra. See Ferreira v. Ferreira*, 9 Cal. 3d 824, 836, 109 Cal. Rptr. 80, 512 P.2d 304 (1973) which quotes from H. Clark, *Law of Domestic Relations*, at 326 (1968): "The necessary stability [of the child] can only be achieved by a great respect on the part of the courts for existing custody decrees, and a lessening of their tendency to assume that their own disposition of a case is preferable to another's."

[6]*Motichka v. Rollands*, 144 Wash. 565, 258 P. 333 (1927); *Ferreira v. Ferreira*, 9 Cal. 3d 824, 512 P.2d 304, 109 Cal. Rptr. 80 (1973); *Finlay v. Finlay*, 240 N.Y. 429, 431, 148 N.E. 624, 40 A.L.R. 937 (1925). *See Bergen v. Bergen*, 439 F.2d 1008, 1015 (3d Cir. 1970).

[7]*See In re Burns*, 194 Wash. 293, 77 P.2d 1025 (1938); *McClain v. McClain*, 115 Wash. 237, 197 P. 5, 202 P. 173 (1921); *In re Saucido*, 85 Wn.2d 653, 660, 538 P.2d 1219 (1975).

[8]The court finds itself on the horns of a dilemma. As stated in *Ferreira v. Ferreira*, 9 Cal. 3d 824, 512 P.2d 304, 109 Cal. Rptr. 80 (1973), at 829: "If the court, to protect the best interests of the child, reopens the custody question, it encourages parents to violate existing decrees in order to gain access to a more favorable forum; in effect, the court rewards a form of child stealing. Yet if the court refuses to reopen the question, it risks rendering an order disconsonant with the best interests of the child."

(a) the nature of the misconduct, (b) the availability of witnesses, or (c) the level to which the proceedings in the other court may have already advanced.

■ If the Superior Court determines that the dispute is properly triable in the sister state, it should stay the Washington proceedings, but retain jurisdiction over the parties for the purpose of: (1) enforcing or modifying the order for temporary custody of the children; (2) compelling the nonresident parent to cooperate in bringing about a fair and speedy hearing in the foreign state; or (3) quashing the stay and resuming proceedings should the foreign decision be unreasonably delayed or fail to reach a resolution on the merits. Briefly, the staying court must protect the welfare of the children pending the final decision of the foreign court.

The Superior Court should hold a hearing to investigate the reason the children are in this state. If it is shown that the children are in Washington because of the unclean hands of Mr. Dunkley, *i.e.*, enticement or inveiglement of the children to Washington by him, the Superior Court should decline jurisdiction. If, however, the court finds that the children are here because of the alleged clearly compelling detrimental conduct of Mrs. Dunkley, the Superior Court should: (1) enter appropriate temporary orders for the children's custody pending a permanent custody decision, and (2) determine which forum is more proper for litigating the children's permanent custody.

The judgment of the Superior Court dismissing a petition to modify a California decree is reversed and the cause is remanded for immediate proceedings in conformance with this opinion.

GREEN and MUNSON, JJ., concur.

Petition for rehearing denied August 11, 1976.

Review granted by Supreme Court January 25, 1977.