[No. 44429.   En Banc.   March 9, 1978.]

*In the Matter of the Marriage of* JAMES REED DUNKLEY, *Respondent, and* CAROLYN JEAN CURTIS DUNKLEY, *Petitioner.*

*Cornelius & Cornelius* and *Dan Evich,* for petitioner.

*Fredrickson, Maxey & Bell, Inc., Carl Maxey,* and *David W. Henault,* for respondent.

HICKS, J.—This interstate child custody dispute raises the usual conflict of laws questions, along with the usual conflicts in the collective judicial mind. Our conflicts resolved, we determine that California remains the appropriate forum to hear this claim for modification of the custody decree which was entered in favor of Mrs. Dunkley (mother) by the Riverside County Superior Court.

The trial court dismissed Mr. Dunkley's (father's) modification action, declining jurisdiction on the basis of domicile, full faith and credit, and forum non conveniens. The Court of Appeals, Division Three, reversed and remanded, holding that Washington has jurisdiction to modify temporarily a California custody order and to determine the proper forum to consider permanent modification, although the long–standing domicile prerequisite to such exercise of

jurisdiction was absent. *In re Marriage of Dunkley,* 15 Wn. App. 775, 551 P.2d 1394 (1976), held that there were sufficient nondomiciliary contacts to confer jurisdiction, though the children's legal domicile is California. The nondomiciliary contacts are: (1) the presence of the children in Washington, and (2) personal service on the mother while she was present in the state. The court cited in support of its conclusion, *In re Rankin,* 76 Wn.2d 533, 458 P.2d 176 (1969), *In re Marriage of Saucido,* 85 Wn.2d 653, 538 P.2d 1219 (1975), and Mr. Justice Frankfurter's concurring opinion in *May v. Anderson,* 345 U.S. 528, 97 L. Ed. 1221, 73 S. Ct. 840 (1953).

In *Saucido* we recognized the ongoing ferment nationally in the existing rule of domicile, which in this state holds that domicile of the children follows that of the parent having legal custody, and that the children must be Washington domiciliaries before the courts of our state can exercise jurisdiction.[1] We stated at page 660:

> We are aware that, although domicile remains a widely–recognized basis for permanent child custody jurisdiction, there is considerable support for the view there are nondomiciliary contacts with a state which may provide a sufficient basis for permanent child custody award jurisdiction. . . . These nondomiciliary contacts include (1) in personam jurisdiction over the contesting parties for custody; and (2) the presence of the child in the forum.

(Citations omitted.) However, we did not abandon the domicile rule, but went on to uphold the trial court's declination of jurisdiction as proper under the unclean hands theory, discussed later.

---

[1] The Washington decisional rule, clearly stated in *Saucido,* has evolved in our jurisdiction through the following cases: *In re Groves,* 109 Wash. 112, 186 P. 300 (1919); *Motichka v. Rollands,* 144 Wash. 565, 258 P. 333 (1927); *State ex rel. Ranken v. Superior Court,* 6 Wn.2d 90, 106 P.2d 1082 (1940); *Jones v. McCloud,* 19 Wn.2d 314, 142 P.2d 397 (1943); *State ex rel. Marthens v. Superior Court,* 25 Wn.2d 125, 169 P.2d 626 (1946); *In re Mullins,* 26 Wn.2d 419, 174 P.2d 790 (1946); *Sherwood v. Sherwood,* 48 Wn.2d 128, 291 P.2d 674 (1955); *Chandler v. Chandler,* 56 Wn.2d 399, 353 P.2d 417 (1960).

In *Rankin* we held that changed circumstances are not required to modify a default custody decree entered in another state when the children are now domiciled here. The domicile rule remained.

Also relied on by the Court of Appeals was Mr. Justice Frankfurter's dicta in *May,* where he cited child welfare as paramount to any adjudication by another state in a child custody dispute and stated at page 536 that the "very special place in life" held by children should be reflected in the law.

While we fully agree with Mr. Justice Frankfurter's statements, share the concerns of the Court of Appeals, and have come to have considerable doubt that domicile should be continued as a blanket prerequisite for jurisdiction, we granted the mother's petition for review as we do not perceive that the Dunkley children's welfare is best served by Washington exercising even temporary jurisdiction. Further to open our courts to petitions such as this one may be a substantial disservice to future child subjects of custody disputes, in that it would tend to encourage forum shopping, child snatching, and would result in conflicting custody decrees between sister states. These evils, with attendant disruptions they cause to the stability in early environment that we recognize as critically necessary to the development of psychologically sound children,[2] should be discouraged. We believe that this must be foremost in the minds of jurists as they seek to resolve these unfortunate disputes "in the best interests of the children," both those children who are immediately before the court and children in general whom we seek to prevent being dragged from courtroom to courtroom and state to state in the future.

---

[2]The "cure" (modification of a custody award and attendant disruption to the child's homelife) may be worse than the "illness." *See* J. Goldstein, A. Freud & A. Solnit, *Beyond the Best Interests of the Child* (1973). The distinguished authors suggest that child custody decisions should be permanent and final when made.

*See also* H. Foster, Jr., *A Review of Beyond the Best Interests of the Child,* 12 Willamette L.J. 545 (1976); N. Gozansky, *Court-ordered Investigations in Child Custody Cases,* 12 Willamette L.J. 511, 525 (1976); and J. Jarrett, *Jurisdiction in Interstate Child Custody Disputes,* 12 Gonz. L. Rev. 423 n.2 (1977).

The facts are as follows:

An interlocutory decree of divorce was granted in California on February 22, 1972, and a final decree in July 1972. The decree was entered as a result of an agreement between the parties and neither mother nor father was represented by an attorney. Father, who was soon to graduate from law school, was awarded custody. He moved to Spokane with their three young children and he remarried in October 1972. Immediately thereafter, mother petitioned in California for a modification of the custody provisions of the divorce decree. After a hearing, the petition was denied and mother was ordered to pay father $75 per child per month support for the children. Subsequently, mother moved to vacate the divorce decree on the grounds of fraud. The vacation was obtained by default.

Thereafter, a second dissolution proceeding was begun in California. A temporary custody hearing was held, resulting in custody being awarded to mother with visitation allowed to father. An order was entered which prohibited father from removing the children from California. In violation of this order, father moved the children back to Spokane where he began a dissolution action in Washington in September 1973, while the second California dissolution action was still pending. A stipulation was entered into and an order entered dismissing the cause in Washington and designating California as the proper forum.

After a 6–day trial in Riverside County Superior Court, California, in which 30 witnesses testified and 1,000 pages of transcript were taken, custody was awarded jointly to mother and father. Mother was to have the children during the school year and father was to have them during the summer. This arrangement did not work. The current action arises as a result of the children's "running away" from mother in Riverside to father in Spokane in September 1975, just after they had returned from their summer visitation with father. The runaway was allegedly accomplished by Greyhound bus to Salt Lake City, Utah, then

rides with strangers to Twin Falls, Idaho, and on to Coeur d'Alene, Idaho, where father picked them up.

Father's affidavit swears that he had no knowledge of the children's action until he received a phone call from them in Salt Lake City and subsequently one from Twin Falls, and that he in no way aided the children by orchestrating their trip, providing money for it, or arranging rides from the bus station to Twin Falls and then to Coeur d'Alene. Mother is adamant in her affidavit that the children were encouraged by father to leave her and that he and his agents arranged the runaway.

Mother's attorney argues unclean hands, but presented no evidence to the trial court. The Court of Appeals was apparently persuaded that father did not engineer the children's removal from California, but we remain skeptical that children ages 11 and under could, unaided, acquire $80 and the necessary fortitude to undertake an interstate trek. Nevertheless, we cannot supply what is not in the record, so mother's argument that we should decline jurisdiction under *In re Mullins,* 26 Wn.2d 419, 174 P.2d 790 (1946), because the children have been removed to this state in violation of a valid existing custody decree, must fail.

*Mullins* established the "clean hands" doctrine, which holds that Washington will not consider modification of a foreign decree when the petitioning parent has brought the child into the forum in violation of a foreign decree. The purpose, as we stated in applying the doctrine in *In re Marriage of Saucido,* 85 Wn.2d 653, 656, 538 P.2d 1219 (1975), is to discourage "child snatching, forum shopping, and repeated litigation of custody awards when one parent is dissatisfied with the first permanent custody award." Again, this jibes with our paramount concern in such matters, and that is respect for foreign decrees such that we can, within the limitations of the courts, insure as stable a custodial situation as possible.

Though we have no proof that father is directly responsible for the presence of the children in Washington at this time, he has previously, on occasion, violated the order of

the California court. To that extent, he is before us with unclean hands.

However, we do not base our reasoning on unclean hands in this instance. Forum non conveniens, recently adopted in Washington in *Werner v. Werner*, 84 Wn.2d 360, 526 P.2d 370 (1974), we do find to be applicable. Though Washington may be the more convenient forum for father, who now resides here, most of the witnesses and all of the litigation to date has been in the California courts. Mother is the parent with the primary legal and physical custody during the school year and it is she who must defend her current right to the children against father's and the children's charges of unfitness. Under forum non conveniens, California appears to us to be the appropriate forum.

The trial court declined jurisdiction in this case on the basis of domicile, full faith and credit, and forum non conveniens. Without attempting to sort out the difficult issue of domicile when the parents have been granted joint custody, as in this case, or determining what full faith and credit might require us to do under these circumstances, we have no question that in this instance we should defer to the custody order of the California court and we will not exercise jurisdiction for the following reasons.

1. The father originally invoked the jurisdiction of the California courts in his dissolution action and had an appeal pending in California from the second dissolution custody decree at the time he brought the current action in Washington;

2. California has continuing jurisdiction over the parties and subject matter to modify the order at any time (*Ferreira v. Ferreira*, 9 Cal. 3d 824, 512 P.2d 304, 109 Cal. Rptr. 80 (1973));

3. The California decree was entered after a long trial and testimony from experts, including a California psychiatrist who treated mother and children for a time and testified on behalf of mother, and a Spokane psychiatrist who testified on behalf of father;

4. The California court weighed the testimony of the various witnesses and it must be presumed awarded custody to mother in the belief that such disposition was in the best interest of the children and that she certainly was not a threat to the children's well–being;

5. According to the affidavits we have before us, the allegations now made against mother were made before, at the two California custody hearings, and were refuted by mother and rejected by the court;

6. If there are indeed such changed circumstances that these children are harmed by their environment with mother, the California court is in as good or a better position to make that determination than the courts of Washington.

Our conclusion that we would not accept jurisdiction in this instance, even if our previous decisions permitted us to do so, is dispositive of the case. However, since this case is typical of those that would benefit from the adoption by this state of the Uniform Child Custody Jurisdiction Act (UCCJA),[3] we take this occasion to commend to the legislature that uniform act for enactment with whatever policy modifications it may deem necessary. Minnesota recently judicially adopted the UCCJA for purposes of the case before it and commended its general adoption to the legislature. *In re Giblin,* 304 Minn. 510, 232 N.W.2d 214 (1975). We need not adopt the UCCJA for purposes of this case,[4]

---

[3]1968 Uniform Child Custody Jurisdiction Act, 9 U.L.A., *Matrimonial, Family & Health Laws* 99, 103 (Master ed. 1973).

The UCCJA was drafted and approved by the National Conference of Commissioners on Uniform State Laws in 1968 as a response to difficult and increasing interstate child custody disputes. It has now been adopted in Alaska, California, Colorado, Delaware, Hawaii, Idaho, Indiana, Iowa, Maryland, Minnesota, Michigan, Montana, New York, North Dakota, Oregon, Pennsylvania, Wisconsin and Wyoming.

For an excellent discussion of the act and its application in Oregon, *see* M. Morris, *Uniform Child Custody Jurisdiction Act; An Attempt to Stop Child Rustling,* 12 Willamette L.J. 623 (1976).

[4]Although father argues in his brief a jurisdictional basis for his claim under the UCCJA, we note that the act would also require us to decline jurisdiction. The

but simply encourage our legislature, which has had the act before it twice, to be aware of the advantages of a uniform law. As stated in section 1 of the act in 9 U.L.A. at pages 103–04:

(a) The general purposes of this Act are to:

(1) avoid jurisdictional competition and conflict with courts of other states in matters of child custody which have in the past resulted in the shifting of children from state to state with harmful effects on their well-being;

(2) promote cooperation with the courts of other states to the end that a custody decree is rendered in that state which can best decide the case in the interest of the child;

(3) assure that litigation concerning the custody of a child take place ordinarily in the state with which the child and his family have the closest connection and where significant evidence concerning his care, protection, training, and personal relationships is most readily available, and that courts of this state decline the exercise of jurisdiction when the child and his family have a closer connection with another state;

(4) discourage continuing controversies over child custody in the interest of greater stability of home environment and of secure family relationships for the child;

---

act provides that if a court of another state has entered a custody order, the forum may not modify the foreign decree unless the sister state lacked jurisdiction under the act or has refused to assume jurisdiction to modify the decree.

Under section 6, a state should not exercise its jurisdiction if at the time of filing the petition, a proceeding concerning the custody of the child is pending in a court of another state exercising jurisdiction in substantial conformity with the act.

Under section 7, the concept of forum non conveniens is adopted, so that a state could decline to exercise jurisdiction if it finds that it is an inconvenient forum to make a custody determination and that a court of another state is a more appropriate forum, based on the best interests of the child.

Under section 8, the clean hands doctrine is codified so that a state may decline jurisdiction when a person has wrongfully taken the child from another state, has engaged in similar reprehensible conduct, or "has violated any other provision of a custody decree of another state". (Italics ours.) 9 U.L.A. at 115.

We note that under the last two provisions the court can assess petitioner for court costs, attorney's fees, travel costs and other expenses incurred by the other party or its witnesses.

(5) deter abductions and other unilateral removals of children undertaken to obtain custody awards;

(6) avoid re–litigation of custody decisions of other states in this state insofar as feasible;

(7) facilitate the enforcement of custody decrees of other states;

(8) promote and expand the exchange of information and other forms of mutual assistance between the courts of this state and those of other states concerned with the same child; and

(9) make uniform the law of those states which enact it.

We are in agreement with the general purposes of the UCCJA, which, as we read them, are to limit rather than proliferate jurisdiction, to encourage deference to foreign courts so as to deter forum shopping and repeated litigation, and to emphasize the importance of stability in a child's environment as the crucial consideration in terms of a child's best interests in any custody determination.[5]

In this instance, the best interests of the Dunkley children were fully considered, evaluated and judicially determined in California, with both parties presenting evidence and argument as to which custodian would be most suitable for the children. There is, of course, a new element for California to consider and that is the act of the children in running away and the fact that they have spent the past 2 1/2 years in Washington as part of the family with their father, his new wife, and their children. Whatever California may do, we cannot accept the past 2 1/2 years of

---

[5]The Uniform Child Custody Jurisdiction Act, Prefatory Note, reads in part:

"Underlying the entire Act is the idea that to avoid the jurisdictional conflicts and confusions which have done serious harm to innumerable children, a court in one state must assume major responsibility to determine who is to have custody of a particular child . . ." 9 U.L.A. at 102.

"The harm done to children by these experiences can hardly be overestimated. It does not require an expert in the behavioural sciences to know that a child, especially during his early years and the years of growth, needs security and stability of environment and a continuity of affection. A child who has never been given the chance to develop a sense of belonging and whose personal attachments when beginning to form are cruelly disrupted, may well be crippled for life, to his own lasting detriment and the detriment of society." 9 U.L.A. at 99–100.

the children's residence in Washington, occasioned by the time required to get the matter to this court, as the type of changed circumstances that would allow this State to exercise jurisdiction even though we were otherwise authorized so to do.

Hence, we reverse the decision of the Court of Appeals, Division Three (*In re Marriage of Dunkley,* 15 Wn. App. 775, 551 P.2d 1394 (1976)), and reinstate the order of the trial court.

WRIGHT, C.J., HAMILTON, UTTER, HOROWITZ, and DOLLIVER, JJ., and HENRY, J. Pro Tem., concur.

ROSELLINI, J. (concurring in part; dissenting in part)—I concur with the majority's statement of the rule in regard to the disposition of interstate custody disputes. However, I would apply the rule prospectively.

The children have been with the father since 1975. From what can be gleaned from the record, the children are in a good environment and seem to be happy and adjusted to their present surroundings. I would not uproot them and return them to California just for the sake of having a uniform rule in regard to interstate custody cases.

The record does not disclose the present home situation in California. There are affidavits in the record which, if true, cast doubt that the home environment in California is a fitting and proper place for the children.

In any event, I believe it would behoove the majority to rule that a hearing should be held prior to ordering the children to California, to determine whether it is for the welfare of the children to be forthwith returned. Failing this, the majority has not discharged its duty to provide that, in a proceeding for custody of children previously awarded to petitioner by foreign divorce decree, "the welfare of the children is the chief consideration". *In re*

*Penner,* 161 Wash. 479, 481, 297 P. 757 (1931).

BRACHTENBACH, J., concurs with ROSELLINI, J.

Petition for rehearing denied June 15, 1978.