[No. 3968–II. Division Two. March 7, 1980.]

*In the Matter of the Marriage of* RAYMOND W. HALL, SR., *and* EILEEN L. HALL.

*Jay C. Immelt* and *Craig W. Weston,* for appellant.

*Joseph F. Quinn* and *Gary A. Burns,* for respondent.

REED, C.J.—Eileen L. Hall, a nonresident respondent in a Washington dissolution action, appeals from the trial court's denial of her motion to set aside the decree's award

of permanent custody of their son to the boy's father, Raymond W. Hall, Sr. Mrs. Hall contests Washington's jurisdiction to make the custody award. We agree with her, reverse that portion of the decree dealing with custody and remand for proceedings under the Uniform Child Custody Jurisdiction Act.

Raymond and Eileen Hall were married in the state of Maryland on April 22, 1972. They resided in Washington for a time and their son, Raymond Hall, Jr., was born in Tacoma in 1973. They moved back to Maryland. Mrs. Hall moved out of the family home in 1975, taking the child with her. Mr. Hall filed a divorce action in Maryland, claiming the boy was being abused under Mrs. Hall's care, and was awarded temporary custody of the boy in March 1976. The Maryland divorce action came on for trial in 1977 but did not proceed to judgment. The trial aborted when a witness stated he had been threatened and assaulted by Mrs. Hall's boyfriend. Claiming fear of physical harm to both of them, Mr. Hall moved with the boy to Virginia and to North Carolina, where divorce proceedings were begun but later dismissed. During his stays in Virginia and North Carolina, he took the boy to Maryland for occasional weekend visitations by the mother. In late 1977, Mr. Hall brought young Ray to Washington, took up residence, and obtained a job. In December of 1977, Mrs. Hall obtained an ex parte order in Maryland granting her temporary custody of the boy. Mr. Hall contends he had no notice of that custody modification, but has not challenged it in court, to our knowledge.

On February 24, 1978, Mr. Hall filed a petition for dissolution of the marriage and for custody in Pierce County Superior Court. He gave notice by *publication* and *mailed* a copy of the summons and petition to his wife in Maryland by registered mail, pursuant to RCW 4.28.100. She actually received notice of the Pierce County action. The Pierce County court awarded Mr. Hall temporary custody pending trial. Nevertheless, apparently under color of her ex parte Maryland custody order, Mrs. Hall traveled to Washington

and, on March 12, 1978, took, the child from Sunday school and attempted to take him back to Maryland. That effort was thwarted by police. The next day, while under arrest, and pursuant to a "request" by the prosecuting attorney, Mrs. Hall stipulated that Raymond, Jr., could be placed temporarily in the custody of Mr. Hall's brother, Claude, in Olalla, Washington, "until pending divorce litigation is resolved or until further order of a Court of competent jurisdiction." She then apparently returned to Maryland and remained there. Mrs. Hall was not served with any process while in the state of Washington.

On June 8, 1978, Pierce County Commissioner Krilich found Mrs. Hall in default for failure to appear and awarded Mr. Hall a divorce and custody of Raymond, Jr., subject to reasonable visitation for Mrs. Hall. On July 17, 1978, Mrs. Hall moved to set aside the decree of dissolution on grounds that Pierce County court had never acquired jurisdiction over her. The motion was denied. This appeal followed.

At the time these proceedings were initiated in 1978 the law in this state was that a court had jurisdiction in child custody matters if it had jurisdiction of the subject matter and personal jurisdiction of the contending parties. Subject matter jurisdiction depended on the domicile of the child, which followed that of the parent having legal custody. *In re Marriage of Dunkley*, 89 Wn.2d 777, 575 P.2d 1071 (1978); *In re Marriage of Saucido*, 85 Wn.2d 653, 538 P.2d 1219 (1975). The domicile of young Raymond was in Maryland at the time his father filed for divorce in that state. The Maryland court had jurisdiction over its resident parties and their child when it granted temporary custody to the father.

The order did not require Mr. Hall to secure court approval before removing the boy from the state, however, and he continued to make the boy available for visitation until he moved to Washington in late 1977. Thereafter his affidavit states that he has "offered her two trips to see our child and on one occasion I have offered to pay for her

round–trip fare from Maryland to Washington. . . . [and] the hospitality of my brother's home to see our child." Without deciding whether such a long–distance arrangement can always afford the other parent "reasonable visitation" as ordered by the Maryland court, and without condoning the deplorable practice of one parent's taking a child around the country in hopes of finding a favorable forum in which to litigate custody, *In re Marriage of Dunkley, supra,* we hold that, in bringing his son to Washington, Mr. Hall did not breach a "binding and permanent custody decree" and was able to establish domicile in Washington without violating this state's "clean hands" doctrine. *See In re Marriage of Verbin,* 92 Wn.2d 171, 179, 595 P.2d 905 (1979); *In re Marriage of Saucido, supra; Ehrich v. Ehrich,* 7 Wn. App. 275, 499 P.2d 216 (1972). The Pierce County court had subject matter jurisdiction to enter its custody decree.[1]

The crucial question which remains is whether the court acquired in personam jurisdiction over the nonresident mother. Mr. Hall contends that the State of Washington may assert personal jurisdiction over his wife pursuant to RCW 4.28.185, our long–arm statute.[2]

---

[1] Effective June 7, 1979, Washington adopted the Uniform Child Custody Jurisdiction Act, Laws of 1979, ch. 98. The Uniform Act contains a comprehensive treatment of child custody jurisdiction and provides for consideration of factors other than the domicile of the parent with legal custody in determining jurisdiction. It should help to render superfluous in future cases the recent uncertainty whether Washington decisional law has or has not finally abandoned the domicile rule as a prerequisite to jurisdiction. *Compare In re Marriage of Myers,* 92 Wn.2d 113, 594 P.2d 902 (1979) *with In re Marriage of Verbin,* 92 Wn.2d 171, 595 P.2d 905 (1979).

[2] RCW 4.28.185 provides, in relevant part:

"Personal service out of state—Acts submitting person to jurisdiction of courts—Saving. (1) Any person, whether or not a citizen or resident of this state, who in person or through an agent does any of the acts in this section enumerated, thereby submits said person, and, if an individual, his personal representative, to the jurisdiction of the courts of this state as to any cause of action arising from the doing of any of said acts:

"(a) The transaction of any business within this state;

"(b) The commission of a tortious act within this state;

■■ Prior to adoption of the Uniform Child Custody Jurisdiction Act in 1979, Washington consistently followed the much–maligned rule of *May v. Anderson,* 345 U.S. 528, 97 L. Ed. 1221, 73 S. Ct. 840 (1953), which requires in personam jurisdiction over both parties to a custody dispute. *In re Miller,* 86 Wn.2d 712, 714, 548 P.2d 542 (1976). The existence of personal jurisdiction depends upon (1) reasonable notice to the defendant that an action has been brought; and (2) a sufficient connection between the defendant and the forum state as to make it fair to require defense of the action in that forum. *Kulko v. Superior Ct.,* 436 U.S. 84. 91, 56 L. Ed. 2d 132, 98 S. Ct. 1690 (1978). Thus the cases have declared that three basic factors must coincide if our courts are to exercise jurisdiction:

(1) The nonresident defendant or foreign corporation must purposefully do some act or consummate some transaction in the forum state; (2) the cause of action must arise from, or be connected with, such act or transaction; and (3) the assumption of jurisdiction by the forum state must not offend traditional notions of fair play and substantial justice, consideration being given to the quality, nature, and extent of the activity in the forum state, the relative convenience of the parties, the benefits and protection of the laws of the forum state

"(c) The ownership, use, or possession of any property whether real or personal situated in this state;

"(d) Contracting to insure any person, property or risk located within this state at the time of contracting;

"(e) The act of sexual intercourse within this state with respect to which a child may have been conceived;

"(f) Living in a marital relationship within this state notwithstanding subsequent departure from this state, as to all proceedings authorized by chapter 26.09 RCW, so long as the petitioning party has continued to reside in this state or has continued to be a member of the armed forces stationed in this state.

"(2) Service of process upon any person who is subject to the jurisdiction of the courts of this state, as provided in this section, may be made by personally serving the defendant outside this state, as provided in RCW 4.28.180, with the same force and effect as though personally served within this state.

"(3) Only causes of action arising from acts enumerated herein may be asserted against a defendant in an action in which jurisdiction over him is based upon this section."

afforded the respective parties, and the basic equities of the situation. (Footnotes omitted.) *Tyee Constr. Co. v. Dulien Steel Prods., Inc.,* 62 Wn.2d 106, 115-16, 381 P.2d 245 (1963); *In re Miller, supra* at 719.

The first factor in the *Tyee* formulation merely reiterates the requirements of RCW 4.28.185(1) that there be some purposeful act or transaction in this state. The second factor expresses the limitations set forth in RCW 4.28.185(1) and (3) that the cause of action must arise from, or be connected with, the act or transaction purposely done or consummated in this state. The third factor does not arise from the statute at all. It expresses the due process limitation that the imposition of personal jurisdiction over a nonresident defendant must not offend traditional notions of fair play and substantial justice. *Callahan v. Keystone Fireworks Mfg. Co.,* 72 Wn.2d 823, 835, 435 P.2d 626 (1967); *Puget Sound Bulb Exch. v. Metal Bldgs. Insulation, Inc.,* 9 Wn. App. 284, 291, 513 P.2d 102 (1973). Mr. Hall advances several theories of jurisdiction. We review them in light of the foregoing principles, bearing in mind that upon a challenge to jurisdiction, the party asserting jurisdiction has the burden of establishing its existence. *Access Road Builders v. Christenson Elec. Contracting Eng'r Co.,* 19 Wn. App. 477, 576 P.2d 71 (1978).

1. Tortious Conduct. Mr. Hall argues that Eileen Hall committed a tortious act by attempting to remove their son from Washington, and that she thereby submitted herself to this state's jurisdiction under RCW 4.28.185(1)(b), *In re Miller, supra.* The tort of deliberate interference with a parent's lawful custody of a child has been discussed in Washington cases, *see Snyder v. State,* 19 Wn. App. 631, 577 P.2d 160 (1978); *Strode v. Gleason,* 9 Wn. App. 13, 510 P.2d 250, 60 A.L.R.3d 924 (1973), and recognized elsewhere, *e.g., McGrady v. Rosenbaum,* 62 Misc. 2d 182, 308 N.Y.S.2d 181 (1970), *aff'd mem.,* 324 N.Y.S.2d 876 (1971); *McBride v. Magnuson,* 282 Ore. 433, 578 P.2d 1259 (1978); W. Prosser,

*Law of Torts* § 124, p. 883 (4th ed. 1971); Restatement (Second) of Torts § 700, comment *c* at 505 (1977).

 Solely for the sake of addressing this argument, we will assume that Mr. Hall had custody of the boy, either because the Maryland modification order was invalid due to lack of notice, or because of the Washington court's award of temporary custody to him pending trial of the action in Pierce County. We will further assume that a cause of action for custodial interference will lie in Washington. Nevertheless, Mrs. Hall's alleged tort cannot provide the basis for in personam jurisdiction in Washington. The long–arm statute requires that the cause of action must *arise from* the tortious act; in this case, the lawsuit was filed nearly 3 weeks prior to the act upon which jurisdiction to entertain the suit is now sought to be predicated. We cannot allow such obvious bootstrapping.

In the case of *In re Miller, supra*, the court held that a father's tort of child nonsupport could render him amenable to Washington's jurisdiction. He had brought the children to their mother on December 26, 1974, left them with her and returned to Idaho. Only 11 days later, January 6, 1975, the mother filed a petition for permanent custody. The Supreme Court held that the father had violated both a statutory and a common–law duty to support his children, and that the custody proceeding was an integral part of, grew out of, and was connected with the father's purposeful failure to support his offspring. *In re Miller, supra* at 720. Although the dissent in *Miller* rightly points out that the father's nonsupport was not sufficiently established in the few days before the action was brought, dissent of Horowitz, J., at pages 725–27, the *Miller* decision can be explained on the ground that the father's failure to provide for his children during those first few days was only the start of a more prolonged period in which he did not support them. The failure of support was a continuous tort which had its beginnings before the suit was filed.

Here, however, Mr. Hall cannot seriously argue that any part of the alleged tort of custodial interference took place

in Washington prior to the singular event of March 12, 1978. He had filed the dissolution and custody petition nearly 3 weeks earlier, without any apparent knowledge that his wife was even coming to Washington. The petition made no mention of any kind of tort; it simply alleged that the marriage was irretrievably broken and that Mr. Hall was a fit and proper person to have custody. The petition did not arise from, nor was it connected with, the subsequent attempt by Mrs. Hall to seize custody. The statutory requirement was not satisfied.

2. Consent to Jurisdiction. Mr. Hall argues that his wife's stipulation executed on March 13, 1978, after the police had stopped her from taking the boy back to Maryland, constitutes her consent to Washington jurisdiction. The theory is that by agreeing to repose temporary custody in Mr. Hall's brother, Eileen Hall was invoking the benefits and protections of Washington law pertaining to custody; for example, she could have relied on it to assert the application of RCW 9A.40.050, which makes it a gross misdemeanor to remove a person from lawful custody of another. This argument assumes, however, that she would not have had standing to complain under that criminal statute were it not for the execution of the affidavit. The fact is that any private citizen has standing to bring any criminal act to attention of the prosecuting authorities, and so would she— whether she had custody or had agreed to custody with someone else. Furthermore, the case cited by Mr. Hall in support of his consent theory, *Hess v. Pawloski*, 274 U.S. 352, 71 L. Ed. 1091, 47 S. Ct. 632 (1927), simply holds that a Massachusetts statute conferring jurisdiction over non-resident motorists for accidents in Massachusetts did not violate due process. Washington's long-arm statute encompassing tortious acts of all kinds by nonresidents, RCW 4.28.185(1)(b), would fit within the same rationale. Assertion of this state's long-arm jurisdiction against nonresidents is limited both by the terms of the statute and by considerations of due process. *Smith v. York Food Mach. Co.*, 81 Wn.2d 719, 721, 504 P.2d 782 (1972); *Deutsch v.*

*West Coast Mach. Co.*, 80 Wn.2d 707, 711, 497 P.2d 1311 (1972); *Williams v. Canadian Fishing Co.*, 8 Wn. App. 765, 509 P.2d 64 (1973).

Here, Mrs. Hall's signing of a document consenting to custody by her son's uncle was not the transaction of business, the commission of a tort, or any of the other acts listed by RCW 4.28.185(1) as the allowable bases for long–arm jurisdiction. Moreover, to extend in personam jurisdiction over Mrs. Hall solely because she was in the state fleetingly and signed the stipulation regarding custody under duress, would offend our notions of fair play and substantial justice. *Tyee Constr. Co. v. Dulien Steel Prods., Inc., supra.* Her action forms at most a legalistic, rather than a substantial basis for jurisdiction. *See Titus v. Superior Ct.*, 23 Cal. App. 3d 792, 100 Cal. Rptr. 477, 486 (1972).

3. Mrs. Hall's Presence in Washington. Finally, Mr. Hall argues that his wife's presence in Washington while in possession of the petition for dissolution and summons is sufficient to give our courts in personam jurisdiction over her. Unquestionably, Mrs. Hall had notice of the dissolution action as required by *Kulko v. Superior Ct., supra.* The crucial issue under this asserted theory of jurisdiction would be whether her contacts with this state were sufficient to make it fair for her to defend here.

As we have noted above, however, the facts must suffice under due process considerations of fairness and they must also establish one of the contacts with the state of Washington outlined in the long–arm statute. We have also noted that Mrs. Hall's execution of a stipulation concerning temporary custody was not an act listed among the statutory criteria. The same is true of her mere presence in this state while in possession of the pleadings. The requirements of the statute again are not satisfied.

4. Forum Non Conveniens. For her part, Mrs. Hall asks us to apply the doctrine of forum non conveniens and defer to the court of Maryland to litigate the custody dispute. That doctrine interplays with the third factor in the *Tyee* formulation discussed above, and requires the trial court's

discretionary assessment of whether—although it has the "power to adjudicate," *i.e.,* jurisdiction over the parties and the subject matter—it should nevertheless decline to hear the case because another forum would be more appropriate due to the location of witnesses, parties, and evidence and the expertise of that court in applying its own law. *Werner v. Werner,* 84 Wn.2d 360, 370–71, 526 P.2d 370 (1974). Forum non conveniens has been discussed in two recent child custody cases, *In re Marriage of Verbin,* 92 Wn.2d 171, 595 P.2d 905 (1979), and *In re Marriage of Dunkley,* 89 Wn.2d 777, 575 P.2d 1071 (1978). The concept has been retained in the Uniform Child Custody Jurisdiction Act, Laws of 1979, ch. 98, § 7. We need not decide the issue in this case, however, because of our holding that Washington never acquired personal jurisdiction over the mother.

5. Uniform Child Custody Jurisdiction Act. The wife also seeks to apply the Uniform Child Custody Jurisdiction Act, Laws of 1979, ch. 98, which in section 6 would require the courts of this state to defer to those of Maryland where "a proceeding concerning the custody of the child was [already] pending." The Uniform Act was not in effect at the time of trial herein and therefore did not apply to those proceedings. *In re Marriage of Verbin, supra* at 178 n.1.

We conclude that, because the State never acquired personal jurisdiction over Mrs. Hall, that portion of the dissolution decree which purports to grant final custody of Raymond W. Hall, Jr., to his father, Raymond W. Hall, Sr., must be reversed and this cause remanded to the Superior Court for Pierce County, with direction to vacate the custody decree previously entered. This decision, nevertheless, does not preclude either party from invoking the provisions of the Uniform Child Custody Jurisdiction Act (Laws of 1979, ch. 98) in order that the issue of custody may be finally resolved.

It is so ordered.

PEARSON and PETRIE, JJ., concur.